[Civ. No. 21346. First Dist., Div. Three. Apr. 27, 1965.]

ROBERT GRAVES, Plaintiff and Appellant, v. WILLIAM J. NICOLSON COMPANY, INC., et al., Defendants and Respondents.

Boccardo, Blum, Lull, Niland, Teerlink & Bell and Edward J. Niland for Plaintiff and Appellant.

Ruffo & Oneto, Ropers, Majeski & Phelps, Rea, Frasse, Anastasi, Clark & Chapman and Cyril Viadro for Defendants and Respondents.

SALSMAN, J.—Appellant sought damages for personal injuries sustained while employed on a construction project at Moffett Field. The jury returned a verdict in favor of all respondents. This appeal followed.

The relationship of the parties is this: Respondent William J. Nicolson Company, Inc. (hereafter referred to as "Nicolson"), was the general contractor for the shell of a building comprising part of a project known as the "3.5 Foot Hypersonic Tunnel" at Moffett Field; respondent Blount-Tears, Inc. (hereafter referred to as "Blount-Tears") was general contractor for the equipment installation; respondent O. C. McDonald Company, Inc. (hereafter referred to as "McDonald") was a subcontractor through Blount-Tears. The Carl N. Swenson Co. held the general contract for the boiler room and steam lines. Appellant was an employee of the Reynolds Supply Company, a subcontractor of the Carl N. Swenson Co. Neither the Carl N. Swenson Co. nor the Reynolds Supply Company are parties to this appeal.

The only issues involved concern claims of error in instructions delivered to the jury. We have concluded that prejudicial error is present and hence that the judgment must be reversed.

These are the essential facts: The shell of the building had been completed. The short sides of the building faced the east and the west; the long sides, the north and the south. Several openings had been left in the south wall in which doors were to be installed. A basement had been prepared, but the floor above it had not been installed, so that the distance between the inner, lower edge of the south wall and the basement floor was about 8 or 9 feet. Some fill had been placed along the outer south wall, but it was still necessary to step up a distance (estimated variously by witnesses at from 6 inches to $3\frac{1}{2}$ feet) to gain access to the ledge of the door opening.

Appellant was welding a steam line about 45 feet from the south wall. There was a pause in his duties while other workmen prepared a section of the line for welding. The day was warm, and appellant walked over to the side of the building to stand in the shade. He approached the door opening in the south wall and stepped up on the ledge.

A piece of rope had been placed across the door opening. Appellant saw it, but could not see how it was fastened to

the sides of the opening. As appellant stood in the doorway he placed his hand on the rope, the rope gave way, and appellant lost his balance. He elected to jump rather than fall into the basement. He sustained serious injuries.

The rope guarding the doorway was described as "a piece of about 3-quarter [¾"] rope with a piece of light wire twisted around the ends and just hooked into the door jambs, just a sight barricade, not a protective barricade."

There was also testimony that respondent Nicolson had been told by an inspector for the Ames Laboratory (the government agency for which the job was being done) to block off the wall openings, and that the Blount-Tears contract with the government required it to take various safety precautions, including the erection of barricades for the protection of its own employees and any other authorized employees on the job. Blount-Tears also had knowledge of the presence of the rope stretched across the door openings in the south wall.

McDonald's general foreman testified that the ropes across the door openings had been placed there at his direction, that he told one of his men to ". . . stretch anything across the doorway, so it would be visual warning that there's a hazard there. . . ." Also, the Ames Laboratory inspector testified that he had asked respondent Nicolson to block off all the wall openings, because when he took hold of one of the ropes it came off in his hand and ". . . I almost went through . . . myself."

■ The trial court gave standard BAJI instructions on assumption of risk. Respondents concede that the instructions as given were error. We hold the error to have been prejudicial. In fairness to the trial judge it must be said that the trial of this action preceded our Supreme Court's decision in *Vierra* v. *Fifth Ave. Rental Service,* 60 Cal.2d 266 [32 Cal. Rptr. 193, 383 P.2d 777], and that before the filing of that decision the instructions on assumption of risk here given had not been disapproved. In *Vierra,* however, the court pointed out that ". . . before the jury may be properly instructed on the doctrine [assumption of risk] there must be evidence not only that the plaintiff knew that he was stepping into a place of danger, but also had actual knowledge of the specific danger involved." (P. 274.) (See also *Shahinian* v. *McCormick,* 59 Cal.2d 554, 566-567 [30 Cal.Rptr. 521, 381 P.2d 377].) Here we find no evidence in the record to indicate knowledge on the part of appellant that the rope stretched across the door opening was likely to give way under slight pressure, and

hence no basis upon which the jury could conclude that he assumed the risk that the rope would give way in the manner described in the evidence. When the rope gave way and appellant lost his balance his fall into the basement was inevitable.

Appellant also claims error in certain other instructions. Because these same problems are likely to arise on retrial it is appropriate that we resolve them on this appeal.

■ The court instructed on the presumptions that respondents exercised due care and obeyed the law. (Code Civ. Proc., § 1963 subds. 4, 33.) Respondents concede that the instruction was error and again contend the error was not prejudicial. ■ It is well established, however, that the benefit of these presumptions is not available where the party who seeks to invoke them testifies concerning his conduct immediately prior to the time in question. (*Laird* v. *T. W. Mather, Inc.*, 51 Cal.2d 210, 221 [331 P.2d 617]; see also *Gigliotti* v. *Nunes*, 45 Cal.2d 85, 93 [286 P.2d 809].) ■ Here the evidence and testimony concerning the actions of respondents immediately prior to the accident were full and complete. There was no gap in their proof, and hence no room for the presumptions. From the evidence presented, the jury could have drawn an inference either way on the vital issue of respondents' negligence. We do not know if the jury found respondents not negligent, or negligent but not liable because of a finding that appellant was contributively negligent. Thus the possibility exists that " . . . the erroneous instruction may have tipped the scale in . . . [respondents'] favor in the deliberations of the jury." (*Laird* v. *T. W. Mather, Inc., supra*, 51 Cal.2d 210, 222.) In light of the evidence in the record, the instruction should not have been given.

■ Appellant requested the court to instruct the jury in the language of general safety order 3238. (Cal. Admin. Code, tit. 8, § 3238.) The court rejected the proposed instruction. There was no error here.

Safety Order section 3238 reads: "Wall openings shall be guarded by a standard railing or other barrier of strength and design equivalent to a standard railing."

The quoted order is not applicable to the evidence. A "wall opening" is defined by section 3222 which reads: "Wall opening means an opening in a wall or partition not provided with glazed sash, having a height of at least 30 inches and a width of at least 18 inches, the bottom of which is less than 30 inches from the floor level and through which a person might fall to a level four feet or more below." It is plain that the re-

quested safety order has reference to the danger of falling from incompleted windows in walls, rather than the danger of falling into an open basement where the floor above has not yet been installed.

 Where a party requests a jury instruction embodying a safety order, he must request the correct order, that is, the order applicable to the evidence. The trial judge is under no duty to select the proper order, even though safety orders are matters of judicial notice. (Gov. Code, §§ 11383, 11384.) Appellant presented a general safety order. Section 3202 provides that safety orders applicable to one industry exclusively take precedence over general industrial safety orders insofar as they are inconsistent. Here construction safety orders, applicable to the construction industry, have been promulgated. Two have application to the evidence in the record. Section 1616(a) reads: "Railings shall be provided on all open sides and ends of all built-up scaffolds, . . . elevated platforms, or other elevations ten feet (10') or more above the ground, floor, or level underneath. . ." Section 1620(a) reads: "If sheathing or any other surfacing provides a passageway that extends to any side of a floor or roof opening through which a man might fall, such opening . . . shall be fenced on all sides by a railing." Section 1615 sets forth the requirements for railings, specifying that they shall be constructed of wood two by fours or similarly substantial materials. Thus on retrial, if the evidence is the same as that now in the record on this appeal, the quoted sections of the Construction Safety Orders would be applicable, and the jury should be instructed concerning them, if requested by appellant.

 Appellant also requested instructions defining an invitee and explaining the duty owed to an invitee by the invitor. The trial court rejected these instructions and gave instructions on duties owed to licensees. This was error.

 It is settled that the relationship between a general contractor and the subcontractor's employee is equivalent to that of invitor-invitee. (*Jean* v. *Collins Const. Co.*, 215 Cal. App.2d 410, 416 [30 Cal.Rptr. 149] ; *Gonzales* v. *Robert Hiller Const. Co.*, 179 Cal.App.2d 522, 529-531 [3 Cal.Rptr. 832] ; see also *Atherley* v. *MacDonald, Young & Nelson,* 142 Cal. App.2d 575 [298 P.2d 700] ; Lab. Code, §§ 6302-6305, 6400-6401.) In the case before us appellant's employer was not a subcontractor to either Nicolson or Blount-Tears. But the existence of industrial hazards and the presence of workmen in various areas on a project in which many employers may

be involved are not dependent on contractual relationships, and no more should be the duty to take necessary safety precautions. In *Chance* v. *Lawry's, Inc.*, 58 Cal.2d 368, 378-379 [24 Cal.Rptr. 209, 374 P.2d 185], our Supreme Court held that the traditional legal classifications of invitee, licensee, and trespasser should not be used where recovery is sought from persons other than the landowner, and that an independent contractor has a duty to use reasonable care to prevent injury to all persons whom he may reasonably expect to be affected by his work. (See also *Carey* v. *Seeger Elec. Co.*, 225 Cal. App.2d 410, 420-422 [37 Cal.Rptr. 332].) Here appellant was employed in the same project as respondents and was privileged to pass in and out of the various work areas. It necessarily follows that the court's instruction concerning duties owed to a licensee should not have been given and that appellant's proposed instructions describing duties owed by an invitor to an invitee should have been allowed.

The judgment is reversed.

Draper, P. J. and Devine, J., concurred.

A petition for a rehearing was denied May 27, 1965, and respondents' petition for a hearing by the Supreme Court was denied June 23, 1965.