[Civ. No. 24577.   First Dist., Div. Three.   Sept. 17, 1968.]

*STATE COMPENSATION INSURANCE FUND et al., Interveners and Respondents, v. OPERATED EQUIPMENT CO., INC., et al., Defendants and Appellants.

*This case was previously entitled, "Quast v. Operated Equipment Co., Inc."

Robert E. Lee for Defendants and Appellants.

T. Groezinger, Loton Wells, James P. Preovolos and Carl J. Weber for Interveners and Respondents.

SALSMAN, J.—This action was commenced by Otto Quast, a carpenter injured on a jobsite while working for his employer, Wilson-Wedekind Co. He sued Laufenberg Bros., Inc., who hired the crane that injured him, and also named as defendants Herb Harmon, the crane operator, and Operated Equipment Co., Inc., the owner of the crane. State Compensation Insurance Fund, the compensation insurer of Quast's employer, intervened and cross-complained against the defendants, seeking recovery of compensation benefits paid to the injured plaintiff. The defendants pleaded that Wilson-Wedekind was negligent in the circumstances surrounding plaintiff's injury and that therefore its compensation carrier was not entitled to a lien on any judgment recovered by the plaintiff. (See *Witt* v. *Jackson*, 57 Cal.2d 57 [17 Cal.Rptr. 369, 366 P.2d 641].) The jury returned a verdict in favor of the plaintiff in the amount of $43,400, which included the lien of the State Compensation Insurance Fund in the sum of $10,788.90. The verdict was against Operated Equipment Co. and Herb Harmon. Laufenberg Bros., Inc., who had rented the crane, was found not liable. The jury found Wilson-Wedekind not negligent. The judgment in favor of Quast, less the compensation lien, has been paid. The only parties now before the court, therefore, are Operated Equipment Co., Inc.,

owner of the crane, and Herb Harmon, the crane operator, as appellants, and State Compensation Insurance Fund and Wilson-Wedekind, Quast's employer, as respondents.

Wilson-Wedekind was engaged in the construction of a three-story apartment house in Sausalito. The site sloped steeply down from street level so that the top floor of the apartment house mounted only to the level of the street. At the time of the accident joists had been laid over the top floor, but they were not covered with any surface material. A narrow walk had been constructed over the top, however, and this walk was covered with plywood. Workmen used this narrow strip to pass from one side of the building to the other.

The plaintiff Quast was injured when the crane was brought to the jobsite to lift a drill from the elevator shaft. The crane had a boom which could be extended to a length of 50 feet. Beneath the boom the crane carried an extension or jib which, when the boom was slightly elevated, could be released by the operator. When released, one end of the jib swings down in response to gravity, while the other end remains attached to the boom. After release, the boom is lowered, and the jib is then lined up and bolted to the end of the boom.

On the day of the accident, the crane arrived at the jobsite and extended its boom across the top of the building. The plaintiff Quast was working at the top level, on the west side of the structure. He needed a tool which was in the tool shed on the east side of the building, and accordingly walked along the narrow strip across the joists, proceeding towards the tool shed. This path led him beneath the boom of the crane. As Quast passed beneath the boom, the crane operator released the device holding the jib, and the jib swung down and out from the boom, striking and injuring Quast.

The basic issue in this case is controlled by the principles expressed in *Witt* v. *Jackson, supra,* 57 Cal.2d 57. Among other things, that case stands for the proposition that a negligent third party is entitled to have a judgment against him reduced by the amount of the compensation paid to an injured employee, if he can prove that the concurrent negligence of the employer contributed to the injuries suffered by the employee. (*De Cruz* v. *Reid,* 69 Cal.2d 217, 225 [70 Cal.Rptr. 550, 444 P.2d 342].) Thus, here, if appellants Operated Equipment Co., Inc. and Herb Harmon, who have

been found to be negligent third parties, can establish that Wilson-Wedekind, Quast's employer, was also negligent in the premises, they would be entitled to have the judgment reduced by the amount of the compensation benefits paid by the employer. On the other hand, if the negligence of the employer is not established, appellants must pay the full amount of the judgment, which means that the lien of State Compensation Insurance Fund must be recognized and discharged by the appellants. As we have seen, the jury found Wilson-Wedekind not negligent.

Appellants' first contention is that Wilson-Wedekind was independently negligent as a matter of law. At the time Quast was injured, a construction safety order required cranes, such as the one used here, to be equipped with a warning device ". . . that may be heard above the usual noises on the site." (Cal. Admin. Code, art. 9, title 8, part 1, § 1587 (c), formerly 1570(c).) It is undisputed that appellants' crane was in violation of this safety order.

The provisions of the Labor Code and the industrial safety orders establish the standard of care owed by an employer to his employees. (*Alber* v. *Owens*, 66 Cal.2d 790, 794-795 [59 Cal.Rptr. 117, 427 P.2d 781].) Various sections of the Labor Code require an employer to provide his employees with a safe place to work, and to do such things as are reasonably necessary to protect the life and safety of his employees. (§§ 6400-6404.) Section 6404 specifically prohibits an employer from maintaining an unsafe place of employment. There was evidence that Wilson-Wedekind had twice previously hired appellants' crane for use on the job where the injury occurred. The presence on the jobsite of appellants' crane, which was deficient and lacking in the equipment for cranes required by industrial safety orders, would be a breach of Wilson-Wedekind's statutory duty to provide its employees with a safe place to work. Breach of this duty is negligence per se. (*Alber* v. *Owens, supra,* 66 Cal.2d 790, 795.)

Some cases describe the violation of a safety order or statute as negligence per se. (*Alber* v. *Owens, supra*; *Atherley* v. *MacDonald, Young & Nelson, Inc.,* 142 Cal.App.2d 575, 587 [298 P.2d 700]; *Mula* v. *Meyer,* 132 Cal.App.2d 279, 284 [282 P.2d 107].) Other cases have said that violation of a statute gives rise to a presumption of negligence which may be overcome by evidence of justification or excuse, or by a showing

that the party who violated the statute did only what a person of ordinary prudence acting under similar circumstances would have done. (See *Alarid* v. *Vanier,* 50 Cal.2d 617, 621, 622 [327 P.2d 897], and cases cited.) ▮ Here Wilson-Wedekind violated provisions of the Labor Code requiring it to furnish its employees a safe place to work when it permitted appellants' inadequately equipped crane to be on the jobsite. Whether this conduct be described as negligence per se or merely presumptive evidence of negligence, it does not impose absolute liability. (*Mula* v. *Meyer, supra,* 132 Cal.App.2d 279, 284, and cases cited.) Evidence is admissible to show justification or excuse, or that the employer acted as might reasonably be expected of a person of ordinary prudence who desired to obey the law. Thus the issue of Wilson-Wedekind's negligence and its effect is like the issue of due care in the ordinary negligence case, and is one solely for the jury, unless reasonable men could not differ as to the result.

▮ As we have related, the jury found Wilson-Wedekind not negligent. There is evidence in the record to support this conclusion. For example, appellant Harmon, who operated the crane, testified that it was his custom to vocally warn those in the vicinity of the crane before commencing operations, and before releasing the jib, but that no such warning was given when Quast was injured. It is inferable that, because of Wilson-Wedekind's prior experience with the crane, this method of warning those in the vicinity of crane operations was satisfactory, or at least equal to the kind of signal or warning contemplated by the safety order. Under these circumstances it was proper for the court to reject appellants' requested instruction to the effect that violation of the safety order was unjustified. Likewise, appellants' motion for judgment notwithstanding the verdict was properly denied on the same grounds. (Cf. *Conner* v. *Utah Constr. & Min. Co.,* 231 Cal.App.2d 263, 276 [41 Cal.Rptr. 728].)

Appellants further argue that the court erred in refusing to instruct on certain safety orders relating to the requirement that workmen subject to the hazard of falling or flying material shall be protected by a hard hat (Cal. Admin. Code, Title 8, § 1516) and in terms of a further safety order concerning overhead loads (Cal. Admin. Code, Title 8, § 1586, formerly § 1570(f).) Neither instruction, however, was relevant to the evidence, and both were therefore properly refused. (See *Graves* v. *William J. Nicolson Co.,* 233 Cal. App.2d 865, 870 [43 Cal.Rptr. 885].)

■ The trial court is also charged with error in admitting the testimony of J. H. Russell, who was called as an expert witness. (Evid. Code, § 720.) Russell testified concerning the operation of the crane and its extension, and answered a hypothetical question regarding the safety of the mechanical process used in attaching the extension to the boom.

First it is argued that Russell was not properly qualified as an expert witness. It is elementary, however, that the trial judge has a wide discretion in determining whether a witness is qualified as an expert, and the judge's ruling on this issue will be reversed on appeal only for an abuse of discretion. (*People* v. *Murray*, 247 Cal.App.2d 730, 735 [56 Cal.Rptr. 21], and cases cited; Witkin, Cal. Evidence (2d ed. 1966) § 1175, p. 1088.) There was evidence that Russell was a graduate engineer with 16 years of experience as an industrial safety engineer. Part of his work included jobsite inspection and he had participated in the formulation of industrial safety orders. It is clear that the trial judge did not abuse his discretion in permitting the witness to testify as an expert.

■ Finally appellants complain that a hypothetical question put to Russell was improper and prejudicial because it called for testimony on an "ultimate fact." Russell was asked in effect whether, on the evidence presented, release of the jib in the manner in which it was released was a safe or unsafe practice. Evidence Code section 805, however, provides that otherwise admissible opinion evidence is not objectionable because it embraces the ultimate issue. (See also *Magee* v. *Wyeth Laboratories, Inc.*, 214 Cal.App.2d 340 [29 Cal.Rptr. 322]; Witkin, Cal. Evidence (2d ed. 1966), §§ 434-435, pp. 390-393.) If the subject is beyond the common knowledge of the jurors, expert opinion evidence is appropriate, and the expert may express his opinion on the ultimate fact in issue, if he has such an opinion. (*People* v. *Wilson*, 25 Cal.2d 341, 349 [153 P.2d 720].)

The judgment and order denying appellants' motion for judgment notwithstanding the verdict are affirmed.

Draper, P. J., and Brown (H. C.), J., concurred.