Opinion
MARSHALL, J.
Defendants Lockheed Shipbuilding and Construction Company (hereinafter Lockheed), Loren G. Savage, and Otha G. Ree, Jr., appeal from convictions on several counts of misdemeanor violations of safety provisions of the California Labor Code.
Charges against the defendants arose out of a flash fire on June 23, 1971, and an explosion on June 24, 1971, during the construction of the San Fernando Tunnel near Sylmar, California, in which 17 persons were killed (16 employees of Lockheed, and 1 employee of the Metropolitan Water District of Southern California (hereinafter M.W.D.)) and others were injured. The San Fernando Tunnel and its right-of-way are owned by the M.W.D. Defendant Lockheed contracted to build this tunnel. Defendant Savage was the Lockheed employee who served as project manager and defendant Ree was the Lockheed employee who served as project engineer and safety engineer. ,
Construction of the tunnel began in January of 1970. In March of 1971, Lockheed took over from the M.W.D. the task of testing the tunnel for gas, which it recognized might be encountered during the course of *Supp. 20 the project. Lockheed then purchased gas-testing equipment from the Mine Safety Appliance Company, known as a 2A explosimeter, a batteiy-powered portable device which tested samples of air for gas.
Prior to the events surrounding the fire and explosion in June of 1971, there were no significant encounters with gas in the excavation of the tunnel.
On June 22d, at approximately 8:30 p.m. and subsequently during that shift, an odor like kerosene or diesel fuel was detected in the tunnel, causing some physical ill effects among the workers and some work stoppage. There was conflicting testimony about the level of the gas readings obtained that evening. When the new shift came on later that night, the odors and the ill effects continued. At this point, ventilation in the tunnel was improved.
At 2:09 a.m. on June 23d, a flash fire occurred in the tunnel, injuring three employees. The tunnel was evacuated. Later that morning, Wallace Zavattero, an industrial safety engineer with the California Division of Industrial Safety (hereinafter D.I.S.), inspected the tunnel together with Lockheed employees. Safety meetings were then held with defendants Ree and Savage and Mr. Zavattero wrote seven special orders or requirements concerning the resumption of work in the tunnel, testing for gas, ventilation and safety equipment, and stating conditions under which work in the tunnel should cease. These orders were discussed with defendants.
Work in the tunnel was resumed later that day (June 23d) but men were still experiencing physical irritation, and a smell like that of crude oil persisted. Gas readings in the tunnel varied, and work was stopped periodically (30-35 times) until lower readings were obtained. There was some testimony that the percentage readings at times did exceed that level at which both general and special orders required closure of the tunnel. Testimony was offered indicating that some personnel wanted to close the job down. But the job was not shut down, and the D.I.S. safety inspector was not called.
When the late shift changed again, at approximately 11:15 p.m. the odors and physical ill effects were still being experienced. Shortly after, the fatal explosion occured causing the deaths of 17 men. Approximately half the deaths were attributed to traumatic injuiy, and half were caused by carbon monoxide.
*Supp. 21 The applicable law is contained in part 1 of division 5 (§§ 6300-6604) of the Labor Code. Briefly summarized, it is as follows: (1) It requires employers, including employees having control of the employment environment, to provide employees with places of employment and employment practices that are as free from danger as the nature of the employment reasonably permits. (2) To this end, the D.I.S. is empowered to . adopt, after notice and hearing, orders that have the legal effect of conclusively establishing reasonable standards of safety. (3) Failure to comply with such an order is prima facie evidence of violation of the duty to provide a safe place or a safe employment practice. (4) Orders of the D.I.S. are required to be issued after notice and hearing except that where, under section 6313 of the Labor Code the division makes ah order or recommendation with respect to the cause of an industrial disability or death, the violation of such an order or recommendation is made a misdemeanor by section 6315 of the Labor Code. (5) An employer, including an employee having control of the employment environment, whose gross negligence causes the death of an employee is guilty of a misdemeanor (§6416 of the Lab. Code).
The complaint as amended included 88 counts.[1] Twenty counts (41-45, 50-54, 59-63 and 68-72) were based on alleged noncompliance with special orders (as distinguished from general orders of the D.I.S.) issued by Wallace Zayattero, a D.I.S. engineer, pursuant to sections 6313 and 6315 of the Labor Code which make no provision for prior notice or for hearing in connection with issuance of such orders. Demurrers to these 20 counts were sustained without leave to amend. This ruling was reviewed by the Court of Appeal in People v. Lockheed Shipbuilding & Constr. Co. (1973) 35 Cal.App.3d 776 [111 Cal.Rptr. 106]. It was there held to be constitutionally impermissible to predicate criminal charges on the orders issued under section 6313 of the Labor Code because the statute provided no prior notice to defendants of intent to issue them and no opportunity to be heard concerning their issuance.
*Supp. 22 The decision of the Court of Appeal in People v. Lockheed Shipbuilding & Constr. Co., supra, was announced in December 1973, several months after trial on the remaining counts was concluded. The trial court, therefore, did not have the benefit of that decision when it instructed the jury on the legal effect of the orders issued under section 6313 of the Labor Code.
Comparison of the General Tunnel Safety Orders, adopted by the D.Í.S. in the manner required by law, with the special orders of Zavattero, issued under the authority of section 6313 of the Labor Code without the requisite provision for notice and hearing, shows that the Zavattero orders were substantially more restrictive of permissible conditions in the tunnel than the general orders.
*Supp. 23 The General Tunnel Safety Orders required that where flammable or noxious gas was encountered or anticipated there must be provided self-contained oxygen breathing apparatus in numbers and type directed by the division. Trained and practiced reserve crews were required to be maintained outside the tunnel. If the air in any part of the tunnel was suspected of containing an explosive gas, such orders specify that the air be tested by a competent tester. If the return air in the tunnel contained more than one percent by volume of an explosive gas [20 percent on the explosimeter], work must be conducted with extreme care, steps must be taken to improve ventilation, tests must be repeated at four-hour intervals and the D.I.S. notified of the condition. If 2 percent or more of an explosive or poisonous or suffocating gas [40 percent on the explosimeter] in concentrations dangerous to life were encountered, the D.I.S. must be notified and operations in the tunnel cease except those necessary to make the place safe.
The general orders further required that fresh air be delivered in adequate quantities sufficient to prevent dangerous or harmful accumulation of dust or gases. Where flammable gas was encountered, normal operations were to cease unless sufficient air was furnished to hold the percentage of flammable gas to not more than 1 percent by volume in the return air in the tunnel.
By statute, these general orders established standards of safety[2] and a violation of them was prima facie evidence of violation of the requirements for a safe place of employment and safe employment practices.[3]
The Zavattero special orders[4] went further; they required continuous testing for gas in specific areas while the tunnel excavating machine *Supp. 24 advanced as well as improvement of ventilation and test hole drilling in the tunnel face.[5]
Mingling by Prosecution of General and Special Orders
A fair review clearly discloses that the prosecution’s case was based on evidence of alleged violation by the defendants of both the general tunnel safety orders of the D.I.S. and the above-quoted special orders issued by Zavattero, the D.I.S. engineer, on June 23, 1971. The evidence of the Zavattero orders and alleged violations thereof was received over repeated objection by the defendants as to its relevance and competence. In particular, the prosecution’s evidence included repeated narration by several witnesses of the presence of defendants Savage and Ree when the Zavattero orders were formulated; extensive interrogation of Zavattero and other witnesses regarding his requirement of “continuous” testing at the tunnel face with acceptable test equipment and alleged failure to comply through supposedly incompetent testing personnel and deficient or improperly operated testing devices. It also included: extensive examination and cross-examination of witnesses regarding alleged failure of ventilation to meet Zavattero’s special requirement of improved ventilation if gas should reach a concentration of 1 percent by volume; full exploration of alleged failure of defendants to follow Zavattero’s *Supp. 25 requirement that D.I.S. be informed of such condition if encountered anywhere in the tunnel atmosphere; and, especially, protracted interrogation of several witnesses concerning Alleged failure of defendants to carry out Zavattero’s written requirement as orally modified, of drilling a test hole in the tunnel face and testing for flammable gas before starting excavation or advancing the mining machine.
The great extent to which the prosecution relied on the Zavattero special orders is reflected by the record of the oral argument to the juiy just prior to the giving of the court’s instructions. Throughout both his opening and closing argument the prosecutor quoted the Zavattero orders, marshaled the evidence showing noncompliance with them and forcefully contended that this was grounds for conviction. The prosecutor’s argument clearly discloses an effort to convince the jury that conviction of defendants on all counts having to do with events subsequent to the first fire in the early morning hours of June 23, 1971, could be based on violation of the Zavattero special orders.
Instructions
The grounds of Appeal do not include insufficiency of the evidence to support the verdicts. Instead, appellants contend that a number of prejudicial errors of law were committed. It is first contended that the trial court’s instructions authorized the juiy. to find defendants guilty of violating the state’s industrial safety laws because of failure to comply with the “special” orders of Zavattero, which orders the Court of Appeal in People v. Lockheed Shipbuilding & Constr. Co., supra, 35 Cal.App.3d 776, has since declared were an impermissible basis for prosecution.
We herewith summarize the pertinent instructions.[6]
*Supp. 26 The trial court first told the jury that violation of any relevant order of the D.I.S. was prima facie evidence of guilt. Once the violation is *Supp. 27 demonstrated, the burden of proof shifted to the defendants. (Instr. No. 50, defendant’s special exhibit FF.) The jury was next told that any *Supp. 28 violation of the General Tunnel Safety Orders would conclusively establish, as a matter of law, that the employment or place of employment was a violation of the Labor Code—i.e., that the employment was not as safe as the nature of the employment reasonably permitted. (Instr. Nos. 60 and 61.) The jury was then told that it might take into consideration the special orders of Zavattero in relation to events subsequent to their issuance—i.e., those occurring after the first fire (Instr. No. 67). Next, the juiy was instructed that it might consider the special orders of Zavattero in determining whether defendants were grossly negligent in connection with the deaths of the 16 Lockheed employees under section 6416 of the Labor Code (Instr. No. 96). Then the juiy was told that safety orders issued by the D.I.S., without differentiating between the general orders issued by the division after notice and hearing and the special orders of Zavattero issued by him under section 6313 of the Labor Code, which does not provide for notice or hearing, have the status of law under the Labor Code and that defendants would have no defense to a violation of the Zavattero orders if those orders were known or should have been known to defendants (Instr. No. 102). Since the evidence shows without conflict that all defendants knew of the Zavattero orders when issued, Instruction No. 102-is tantamount to an instruction that violation of the Zavattero orders was indefensible as a matter of law. The statements of the trial court to the jury just before it started deliberations, that the jury, if it saw fit, could adopt the Zavattero special orders in lieu of the division’s general orders as the “minimum standard of care,” or might “look at all the circumstances and determine what you feel should be a higher standard” was, first, a reiteration of the proposition that violation of the Zavattero special orders would constitute an indefensible crime (an instruction now known to be erroneous under the law as decided in People v. Lockheed Shipbuilding & Constr. Co., supra, 35 Cal.App.3d 776), and, second, an invitation to the juiy to forsake, if it saw fit, the guidelines provided by the division’s general tunnel safety orders and substitute the jury’s own unguided “feeling” of what constitutes the standard of care an employer must satisfy in order to comply with the laws defendants were charged with violating.
The court in People v. Lockheed Shipbuilding & Constr. Co., supra, 35 Cal.App.3d 776, fully explains why instructions such as these are erroneous. They purport to give the special orders of Zavattero the effect *Supp. 29 of law in violation of the requirement that safety orders be promulgated in compliance with due process prerequisites of notice and hearing. They also purport to allow the jury to determine for itself what constitutes the required standard of care regardless of those standards established by the D.I.S. in discharge of its statutory duty to implement the standardless sanctions of sections 6400-6404 of the Labor Code, thus attempting to substitute one-man edict in lieu of due process of law.
We are satisfied that misdirection of the jury in the respects above discussed was not harmless error under section 13 of article VI of the California Constitution. The treatment by the trial court of violations of special orders in the same manner as general orders may very well have caused the jury to convict the defendants because it believed them to have been guilty of violations only of the more restrictive special orders which the court, in People v. Lockheed, supra, has declared may not constitutionally be the basis of criminal prosecution.
June 23d Fire—Counts 34, 82 and 86
As hereinbefore noted, the defendants Lockheed (counts 34 and 86) and Savage -and Ree (count 82) were convicted of violating section 6401 of the Labor Code in relation to events occurring on June 22-23, 1971, prior to issuance of the Zavattero orders.
Although the jury was correctly instructed that the Zavattero orders had no application to such events, the instructions given the juiy for their guidance were erroneous as to these counts for other reasons. As shown below, the jury was erroneously informed that sections 6400-6404 of the Labor Code establish “strict liability” crimes notwithstanding the statutory definition that safety means “such freedom from danger as the nature of the employment reasonably permits.” (§ 6310 of the Lab. Code.)[7] The jury was further instructed that failure to comply with a general safety order is conclusively presumed to constitute violation of the statute, notwithstanding the statutory classification of such failure as prima facie evidence of violation of the statutory safety law. (§ 6414 of the Lab. Code.) The jury also was instructed that they “might ask [themjselves, independent of any general tunnel safety orders or any special safety orders, just looking to the totality of the circumstances, were any of the ... four strict liability statutes [§§ 6400, 6401, 6402, 6404] violated.”
*Supp. 30 We are unable to determine whether the general verdicts returned on counts 34, 82 and 86 were based upon the jury’s determination of guilt as a “conclusive presumption” from violation of a general safety order or orders, or from the juiy’s unguided reaction, “independent of any safety orders,” to the “totality of the circumstances” of the case.
The danger of a miscarriage of justice is manifest in giving the jury the erroneous option, on the one hand, to regard failure of the defendants to follow general safety orders as conclusive proof of crime and, also erroneously, on the other, to free the jurors of all legislative and administrative standards and allow them to set their own standards of safety based on “the totality of circumstances.” This danger was compounded by the complex nature of the case. The comparatively minor charge of violating section 6401 of the Labor Code on June 22d and June 23d was joined with the much more serious charge of violating section 6416 of the Labor Code on June 24th. The record shows no evidence of gas in the tunnel prior to the night of June 22d and no evidence of flammable gas until 2 a.m. on June 23d, subsequent to the time of the offenses charged in counts 34, 82 and 86. There was manifest danger that the jury, given carte blanche to determine the required standard of care by “the totality of the circumstances” would judge culpability for events of June 22d (count 34) and the night of June 23d (counts 82 and 86) in light of the subsequent fire on June 23d and the tragedy of June 24th.
In this combination of circumstances, we are of the opinion that the jury may well have been confused or misled by the erroneous instructions and that there is a reasonable probability that if properly and clearly instructed they would have returned verdicts on counts 34, 82 and 86 more favorable to each defendant convicted thereunder. (See People v. Gordon (1973) 10 Cal.3d 460, 470 [110 Cal.Rptr. 906, 516 P.2d 298].)
We are satisfied that misdirection of the jury in the respects above discussed was not harmless error under section 13, article VI of the California Constitution.
We have reviewed the entire record having in mind that People v. Lockheed Shipbuilding & Constr. Co., supra, 35 Cal.App.3d 776, holds that prosecuting these defendants for violation of the Zavattero orders would offend federal constitutional guarantees of equal protection and due process of law, and that before a federal constitutional error can be held harmless we must be able to declare a belief that it is harmless *Supp. 31 beyond a reasonable doubt. (Chapman v. California (1967) 386 U.S. 18, 24 [17 L.Ed.2d 705, 710-711, 87 S.Ct. 824, 24 A.L.R.3d 1065]; People v. Talley (1967) 65 Cal.2d 830, 840 [56 Cal.Rptr. 492, 423 P.2d 564], See also Henderson v. Harnischfeger Corp. (1974) 12 Cal.3d 663, 674 [117 Cal.Rptr. 1, 527 P.2d 353].) We have examined “all the circumstances of the case including a review of all of the evidence as well as the instructions as a whole.” (Bertero v. National General Corp. (1974) 13 Cal.3d 43, 59 [118 Cal.Rptr. 184, 529 P.2d 608].) We also have reviewed the jury arguments of counsel to ascertain the contentions made to the jury. Our review satisfies us that the errors above discussed were prejudicial to the defendants.
Strict Liability
A. Statutory Provisions
A fundamental misconception of the trial court appears to have been primarily responsible for its failure to instruct the jury properly as to strict liability. The judge repeatedly vouchsafed the view that the safety laws expressed in sections 6400-6404 of the Labor Code were complete in themselves and self-executing, imposing, as he said, “strict liability” on defendants for providing safe employment and a safe place of employment. This view is incorrect. Sections 6400-6404 of the Labor Code alone prescribe no standard by which to measure the defendants’ duty to provide “safety” for employees. These sections depend for enforceable vitality on the lawful promulgation of implementing standards by the D.I.S. which is authorized by statute to adopt lawful safety orders. “Strict liability” cannot be deduced or inferred from such standards.
B. Decisional Law
The trial judge declared in his instructions, inter alia, that violations of sections 6400-6404 of the Labor Code are strict liability crimes, as above stated. If strict liability were to apply, the court could not inquire whether defendants provided a reasonable degree of safety as they are required to do by the statute. It is of some significance that in civil actions, sections 6400-6404 are not. treated as strict liability statutes. (E.g., Caswell v. Lynch (1972) 23 Cal.App.3d 87, 91 [99 Cal.Rptr. 880]; State Comp. Ins. Fund v. Operated Equipment Co. (1968) 265 Cal.App.2d 759, 763-764 [71 Cal.Rptr. 531]; Souza v. Pratico (1966) 245 Cal.App.2d 651, 662 [54 Cal.Rptr. 159]; Jones v. McFarland Co-op Gin, Inc. (1965) 237 *Supp. 32 Cal.App.2d 94, 98 [46 Cal.Rptr. 572]; Conner v. Utah Constr. & Mining Co. (1964) 231 Cal.App.2d 263, 276 [41 Cal.Rptr. 728]; Jean v. Collins Construction Co. (1963) 215 Cal.App.2d 410, 415 [30 Cal.Rptr. 149]; Vega Aircraft Corp. v. Ind. Acc. Com. (1947) 77 Cal.App.2d 786, 793 [176 P.2d 947].) A fortiori, a defendant in a criminal proceeding should be accorded no less favorable statutory construction than is his lot in a civil action. (See, e.g., People v. Stuart (1956) 47 Cal.2d 167, 175 [302 P.2d 5, 55 A.L.R.2d 705].)
Constitutionality of Sections 6400-6404, Labor Code
Defendants contend that sections 6400-6404 of the Labor Code are unconstitutionally vague. On the contrary, the standard of reasonableness employed therein has no constitutional defect. (See Davis v. Municipal Court (1966) 243 Cal.App.2d 55, 58 [52 Cal.Rptr. 189]; Helme v. Great Western Milling Co. (1919) 43 Cal.App. 416, 423 [185 P. 510], in which the court discussed an earlier version of § 6401.) Similar provisions in New York (§ 200 of the Labor Law) and Alaskan law have been approved by state and federal courts. (Bellows v. Merchants Despatch Transp. Co. (1939) 12 N.Y.S.2d 655, 656-657 [257 App.Div. 15]; Burris v. American Chicle Co. (1941) 120 F.2d 218, 222; State v. Marathon Oil Co. (Alaska 1974) 528 P.2d 293, 298. See also People v. Beaugez (1965) 232 Cal.App.2d 650, 656 [43 Cal.Rptr. 28]; People v. Vis (1966) 243 Cal.App.2d 549, 554-555 [52 Cal.Rptr. 527].)
The appellate court’s attitude toward the boundaries of statutoiy language beyond which vagueness may be found is well stated in Davis v. Municipal Court, supra, 243 Cal.App.2d, 55, 58: “We do not agree that the phrase ‘reasonably be understood to imply’ fails to meet the constitutional standard required. The rule is well established that although the words of a particular statute may not mean ‘the same thing to all people, all the time, everywhere,’ they do not offend the requirements of due process if they ‘give adequate warning of the conduct proscribed and mark “. . . boundaries sufficiently distinct for judges and juries fairly to administer the law .... That there may be marginal cases in which it is difficult to determine the side of the line on which a particular fact situation falls is not sufficient reason to hold the language too ambiguous to define a criminal offense . . .” ’ (Roth v. United States (1957) 354 U.S. 476, 491-492; [77 S.Ct. 1304, 1 L.Ed.2d 1498]; to the same effect, see Canon v. Justice Court (1964) 61 Cal.2d 446, 450 [39 Cal.Rptr. 228, 393 P.2d 428].)”
*Supp. 33 The greater specificity of the 1973 amendments to section 6423 of the Labor Code, effective October 1, 1973, which now provide for knowing or negligent violation, repeated violations and violations which cause a real and apparent hazard to employees, do not necessarily brand as vague the more general provisions of sections 6400-6404- which are applicable in the instant case. When the same Legislature (1973) amended sections 6400-6404 by adding the phrase “and health” and “healthful” it left the terms “safe” and “safety” and their definition (Lab. Code § 6310)[8] undisturbed and it can be presumed that the Legislature found such words meaningful and expressive of its intent.
Use of Other Cases as Illustrations
After instructing the jury, inter alia, as to the meaning of gross negligence, the trial judge commented on the general and special orders and then declared:[9]
“At one end of the yardstick, you might say, you have lawful conduct. You then, coming up in order, you can have what we call ordinary negligent conduct. Then it becomes gross negligence. You can then have, going further higher on the scale, willful misconduct and finally intentional misconduct.
“Now, one of the problems here is that you are not able to lay this yardstick out and ascertain exactly where you go from ordinary negligence to gross negligence or where it is that you leave gross negligence and proceed into the area of willful misconduct.
“Now, with that in mind I, in an attempt to give you some idea in other areas—completely different area—what the Appellate Courts have held to be, as a matter of law, sufficient to constitute gross negligence—I have looked up some cases and taken from those cases the fact situations to give you an idea of, as I say, what has constituted as a matter of law gross negligence. And I have turned to an area that we are all probably the most familiar with and this is the operation of the automobile.”
Appellants contend, and nothing in the record contravenes such contention, that without previously notifying counsel as to the cases which he intended to mention and without affording counsel an *Supp. 34 opportunity to object, the trial judge discussed five Court of Appeal decisions. The trial court declared that the facts therein were sufficient “as a matter of law” to constitute gross negligence. Such a discussion of legal precedents is a review of law and therefore must be treated as additional instructions. It was, unfortunately, misleading. The trial court should have informed the defendants of its intention to mention the cases to the jury so that counsel would have an opportunity to object before the jury heard them. In all the conferences concerning instructions, we find that nothing was said about the intent to discuss such cases. Such silence violates the spirit of section 1093.5 of the Penal Code. (See Cooper v. Superior Court (1961) 55 Cal.2d 291, 302 [10 Cal.Rptr. 842, 359 P.2d 274].) This silence certainly was prejudicial as the defendants could not undertake preventive measures. Certainly, once the comments were uttered, and the examples had been digested by the jury, objection would have been useless as no admonition to the jury would have removed their effect. (See Karwoski v. Grant (1938) 30 Cal.App.2d 171, 178, 179 [85 P.2d 944].)
An additional error is found in these instructions. In none of the five decisions cited by the trial judge did any court find gross negligence as a matter of law. The facts which the trial judge culled from the cases and furnished the jury were so meager that they may well have misled the jury as to the basis on which gross negligence may be found. An examination of the totality of facts in each case reveals that gross negligence involves a much greater degree of negligence than might be inferred from the facts described to the jury by the trial court. The difficulty of conveying an accurate picture of the circumstances of other cases demonstrates why the courts have frowned upon the use of other cases as examples, at least when such use is attempted by counsel. (See People v. Onessimo (1924) 65 Cal.App. 341, 344 [224 P. 101]; People v. Mears (1930) 251 Mich. 359 [232 N.W. 358]; State v. Hester (1926) 137 S.C. 145 [134 S.E. 885].)
Subsequent Amendment Does Not Necessarily Cause Abatement
An amendment in 1972[10] of the statutory definition of “employer” in section 6304 of the Labor Code excluded supervisory personnel from the ambit of the statute. Such amendment did not abate the charges against Savage and Ree although they were such supervisory *Supp. 35 personnel. (See Sekt v. Justice’s Court (1945) 26 Cal.2d 297, 301-303 [159 P.2d 17, 167 A.L.R. 833]; In re Cregler (1961) 56 Cal.2d 308, 309 [fn. 2] [14 Cal.Rptr. 289, 363 P.2d 305].) Section 9608 of the Government Code permits continuance of the prosecution where there is no express statutory provision evidencing a legislative intention to abate. Although section 9608 does not mention complaints, the accusatory vehicle used in this prosecution, the term which it does use—information—encompasses complaints (Sekt v. Justice’s Court, supra, pp. 302-303) and it therefore is applicable here. As the 1972 amendment did not expressly bar prosecution of acts chargeable under the prior statute, the prosecution of this case was not barred.
Subsequent Remedial Measures
After the fire and the explosion, remedial measures were undertaken by Lockheed. The prosecution attempted to introduce such remedial measures into evidence. The trial judge admitted the evidence solely to prove that Lockheed had control of the premises and declared that he would so instruct the jury. In view of such proposed instruction, the trial judge excluded testimony of a fire department chief to the effect that even if the measures had been in effect before the explosion, the tragedy would nevertheless have occurred. However, at the close of the case, he instructed the jury that subsequent remedial measures could be considered not only to show who had control and whose duty it was to take safety measures, but also the possibility or feasibility of eliminating the cause or results of the accident and impeachment of credibility. This exclusion of proffered evidence was error and in view of the circumstances of the case posed a real danger to the defendant Lockheed in that the jury might well conclude, lacking the testimony of the fire chief, that had such measures been undertaken the explosion would have been averted.
Although subsequent remedial measures may not be introduced to show negligence (Evid. Code, § 1151), they may be offered for impeachment purposes. However, the subsequent work done in this case had been performed under the compulsion of orders of the D.I.S. (Pierce v. J. C. Penney Co. (1959) 167 Cal.App.2d 3, 7 [334 P.2d 117].) Under these circumstances, alterations may not be introduced for impeachment purposes. (See Westbrooks v. Gordon H. Ball, Inc. (1967) 248 Cal.App.2d 209, 216, 217 [56 Cal.Rptr. 422].) Another exception to the general rule against admission of remedial measures (Evid. Code, § 1151) arises where there is need to prove control of the premises by the defendants. *Supp. 36 Such exception is also not applicable here as the defendant Lockheed has never denied that it was in control of the premises. A final exception may arise where evidence of subsequent remedial measures is offered to show the possibility or feasibility of eliminating the cause of an accident (Baldwin Contracting Co. v. Winston Steel Works, Inc. (1965) 236 Cal.App.2d 565, 573 [46 Cal.Rptr. 421], but see Evid. Code, § 1151 adopted after Baldwin, supra). However, if this exception is claimed, the defendant should have been permitted to introduce the evidence of the fire chief that such measures would not have prevented the tragedy. In any case, this exception is not applicable as such evidence should only be admitted if a defendant declares that nothing could have been done to avoid the accident. No such declaration was made by any of the defendants.
Gas Chromatograph Tests
An important fact issue at the trial was whether, as contended by defendants, the gas causing the explosion was a sudden and unpredictable in-rush of a large quantity of methane, or, as contended by the prosecution, was an infiltration of “heavy carbon” type gas near the floor of the tunnel where, it was claimed, the gas-testing procedures pursued by the defendants were ineffective. Defendants sought to introduce evidence of the record of gas chromatograph tests of the blood of the victims to support its theory. Conceding its relevance the trial court nevertheless rejected this evidence on the ground that under section 352 of the Evidence Code it would be prejudicial and misleading. Having in view the importance of the issue, the direct relation to it of the proffered evidence and the limited scope of the required interrogation, it appears clear that the probative value of the evidence was relatively great compared with the objections that induced the court to exclude it and that its exclusion was an abuse of discretion. (See People v. Schader (1969) 71 Cal.2d 761, 773-775 [80 Cal.Rptr. 1, 457 P.2d 841]; People v. Enos (1973) 34 Cal.App.3d 25, 34 [109 Cal.Rptr. 876]; People v. Sheets (1967) 251 Cal.App.2d 759, 764 [59 Cal.Rptr. 777]; People v. Delgado (1973) 32 Cal.App.3d 242, 249-252 [108 Cal.Rptr. 399].)
Judgment is reversed.
Holmes, P. J., and Alarcon, J., concurred.

The 88 counts are herewith summarized:
Counts 1-16 Labor Code section 6416 (alleges Lockheed wilfully and unlawfully, through its gross negligence in failing to provide a safe place of employment, to wit: the San Fernando Tunnel, caused the death of [16 employees] on June 24,1971).
Counts 17-32 Labor Code section 6416 (same as counts 1-16 except it is alleged against Loren G. Savage and Otha G. Ree instead of Lockheed).
Count 33 Labor Code section -6400 (alleges Lockheed wilfully and unlawfully furnished employment which was unsafe for'its employees on June 22, 1971).
Count 34 Labor Code section 6401 (alleges Lockheed wilfully and unlawfully failed to furnish and us,e safety devices and safeguards to *Supp. 22 render a safe place of employment on June 22, 1971).
Count 35Labor Code section 6402 (alleges Lockheed wilfully and unlawfully required and permitted its employees to. go and be in a place of employment which was not safe on June 22, 1971).
Count 36Labor Code section 6404 (alleges Lockheed wilfully and unlawfully occupied and maintained a place of employment which was not safe on June 22, 1971).
Counts 37-40Labor sections 6400-6402, 6404 (same as counts 33-36 except the date alleged is June 23, 1971, between the hours of 2:30 a.m. and midnight instead of June 22, 1971).
Counts 46-49Labor Code sections 6400-6402, 6404 (same as counts 33-36 except the date alleged is June 24, 1971, instead of June 22, 1971).
Counts 55-58Labor Code sections 6400-6402, 6404 (same as counts 37-40 except it is alleged against Loren Savage and Otha Ree, Jr. instead of against Lockheed).
Counts 64-67Labor Code sections 6400-6402, 6404 (same as counts 46-50 except it is alleged against Loren Savage and Otha Ree, Jr. instead of against Lockheed).
Counts 41-45, 50-54, 59-63 and 68-72 were dismissed when defendants’ demurrer was sustained without leave to amend.
Counts 72-80 were against other defendants who are not appealing in this case.
Counts 81-84 Labor Code sections 6400-6402, 6404 (same as counts 33-36 except the date alleged is June 23, 1971, between the hours of midnight and 2:30 a.m. instead of June 22, 1971, and except it is alleged against Loren Savage and Otha Ree, Jr. instead of against Lockheed).
Counts 85-88 Labor Code sections 6400-6402, 6404 (same as counts 33-36 except the date alleged is June 23, 1971, between the hours of midnight and 2:30 a.m. instead of June 22, 1971).

Disposition of Counts by Jury

The jury found Lockheed guilty of counts 1-16, 34, 37-40, 46-49 and 86. The jury found Lockheed not guilty of counts 33, 35,36, 85, 87 and 88.
The jury found Loren G. Savage guilty of counts 17-32, 55-58, 64-67 and 82. The jury found Loren G. Savage not guilty of counts 81, 83 and 84.
The jury found Otha G. Ree, Jr., guilty of counts 56, 65 and 82. The jury found Otha G. Ree, Jr., not guilty of counts 18-23, 30, 31, 55, 57, 58, 64, 66, 67, 81, 83 and 84. The jury was unable to reach a verdict as to counts 17, 24-29 and 32. The court declared a mistrial as to counts 17,24-29 and 32.

Sections 6500, 6507 (repealed 1973, see now § 6315.5).

Section 6414 (repealed 1973, see now § 6423).

The written requirements of the Zavattero special orders are as follows:
First: “Provide and require continuous testing at the tunnel face for flammable gases with acceptable test equipment. 8425A.” [The concluding figure refers to a General Tunnel Safety Order of the D.I.S.]
Second: “If the air in the atmosphere reaches concentration of. . . [20 percent on the explosimeter], work therein should be conducted with extreme care and steps taken to improve the ventilation. The Division of Industrial Safety shall be notified of the condition. 8425A.”
Third: “When ... [40 percent on the explosimeter] or more of explosive gases are encountered, all productive work in the tunnel shall be discontinued. The Division of Industrial Safety shall be notified of the conditions. 8425 B.”
Fourth: “Test procedures shall be the following:
“a. Continuous testing for flammable gases while the excavating machine is being *Supp. 24 advanced. 8425-8410.”
“b. Work areas in back of the face shall be tested for flammable gases during the shift. 8425-8410.”
“Note c. If a and b reveal flammable gases, more extensive testing will be required. The ventilation shall be improved. 8425-8410.”
Fifth; “Prior to starting excavation at the face and/or advance of the excavating machine, drill a test hole ahead of the face in order to test for flammable gases. 8410-8416.”
Sixth: “Provide and maintain five self-contained apparatuses at the job site. 8422.”

The record discloses that Zavattero orally modified the requirement of test hole drilling in the tunnel face to some extent. Savage requested permission to test at an existing dewatering hole that extended a hundred feet ahead of the tunnel face instead of drilling a new testing hole. Zavattero testified that he replied to Savage by stating that testing at the existing hole would be acceptable so long as no gas was encountered, but that if gas was encountered a new test hole must be drilled in the tunnel face and that, in all events, a new hole must be drilled in the tunnel face the next day. Ree, on the other hand, testified that Zavattero told him that the existing test hole would suffice for that day, but a new hole must be drilled “tomorrow.” Witness Mizyak testified that on June 23d Zavattero' gave Savage permission to defer drilling a new test hole until “tomorrow morning” and that it need not be drilled in the tunnel face but could be “a slant hole on the side as you have previously done.”
This conflict in the evidence has significance in light of the People’s claim that defendants violated the Zavattero order to drill a test hole in the tunnel face if at any time gas was encountered, regardless of the conditional permission given to defer drilling the new test hole until tomorrow.

The instructions and comments above referred to are as follows:

Instruction No. 50

“You are hereby instructed that in this prosecution it is prima facie evidence of a violation of Counts 33 through 88 if it is found that an accused has failed or refused to comply with any order, rule, regulation, or requirement of the Division of Industrial Safety relative thereto. The burden of proof shall thereupon rest upon the accused to show that he has complied with such safety provision.”

Instruction No. 60

“If you find that on June 22nd, 23rd, or 24th, 1971, any provision of these General Tunnel Safety Orders was violated, then, as a matter of law, you must find that the employment or place of employment was not as safe as the nature of the employment reasonably permitted.”

Instruction No. 61

“You are instructed that every General Tunnel Safety Order is conclusively presumed to be reasonable and lawful and to fix a reasonable and proper minimum standard and *Supp. 26 requirement of safety.
“By being conclusively presumed to be reasonable and lawful and to fix a reasonable and proper minimum standard and requirement of safety it is meant that you may not pass upon the reasonableness of the General Tunnel Safety Orders but you are directed to accept such orders as being reasonable and lawful and fixing a minimum standard of safety which is reasonable and proper.
“Violation of such an order conclusively establishes an unsafe condition.”

Instruction No. 67

“You are instructed that the Division of Industrial Safety orders issued by George Denton on December 18, 1970, may be considered by, you as to those counts charged on June 22, 1971, and to those counts charged between the hours from 12:00 midnight to 2:30 a.m. on June 23, 1971. You may also take them-into consideration with regard to those counts charging a violation of Labor Code Section 6416 for the puipose of determining gross negligence.
“You are further instructed that the Division of Industrial Safety Orders issued by Wallace Zavattero on June 23, 1971, may be considered by you as to all counts charged between the hours from 2:30 a.m. to 12:00 midnight on June 23, 1971, and to those counts charged on June 24, 1971.”

Instruction No. 96

“You are instructed that every person shall do everything necessary or proper in order to secure compliance with, and observance of, every order, decision, direction, rule, or regulation lawfully issued by the Division of Industrial Safety which in any way relates to or a fleets the safety of employment or places of employment or protects the life and safety of employees in such employments or places of employment.
“If you find that any or all of the defendants did not do everything necessary or proper ' to secure compliance with General Tunnel Safety Orders, Sections 8406; 8410 a, c; 8416, 8422 a, b, c; 8425 a, b, c; and 8431 a, or with the safety requirements of December 18, 1970, issued by George Denton, or with the safety requirements of June 23, 1971, issued by. Wallace Zavattero, then you shall take this finding or findings into consideration in determining if the defendants were grossly negligent.”

Instruction No. 102

“When the evidence shows that a person did, or omitted to do that which the law forbids and which it declares to be a crime, he has no defense in the fact, if it be a fact, that he did not know that his act or omission was unlawful or that he believed it to be lawful. This principle of law is subject to one exception under the facts in this case. Safety orders, issued by the Division of Industrial Safety are given the status of laws under the Labor Code. A defendant, must comply with the special safety requirements issued by George Denton on 12/18/70 and by Wallace Zavattero on 6/23/71; but only if that defendant knew, or in the exercise of due care in performing his duties, should have known, of the existence of those requirements.
“However, each defendant is conclusively presumed by the law to have knowledge of the General Tunnel Safety Orders, and ignorance of such General Tunnel Safety Orders is not a defense.
“The extent to which the same safety requirements are set forth in either Mr. Denton’s or Mr. Zavattero’s special safety requirements and also in the General Tunnel Safety Orders, ignorance of either Mr. Denton’s or Mr. Zavattero’s safety requirements is no defense to the legal obligations of an employer under the General Tunnel Safety Orders.”

Comments by Trial Judge

Transcript, Vol. 119, page 14772, lines 17-24:

“Then, lastly, I suggest that you might ask yourselves independent of any general tunnel safety orders or any special safety orders, just looking to the totality of the *Supp. 27 circumstances, were any of the safety provisions, that is the four strict liability statutes, violated. If you find that they were not violated then you should acquit each of the defendants you feel on that particular shift that there was not a violation with relation to him.”

Transcript, Vol. 119, page 14778, lines 14-28; page 14779, lines 1-13:

“Now, I have instructed you that the general tunnel safety orders set forth the minimum standard of care; that they are conclusively presumed to be reasonable, proper and lawful; so, you have to start out with that being the basic minimum standard of care which an employer would be held to.
“Compliance with those tunnel safety orders does not necessarily absolve one of gross negligence but it is something you can take into consideration.
. “Now, I don’t think that there is any doubt that the special safety orders written by Mr. Zavattero were stricter in many regards than the general tunnel safety orders.
“Now, you may consider the special safety orders issued by Mr. Zavattero on the issue of negligence and with regards to setting the standard of care with this provision:
“I have indicated the general tunnel safety orders conclusively set a minimum standard of care.
“Now, with regards to special safety orders, you first must determine whether or not those special safety orders were reasonable. If you find they set an unreasonable standard of care—and by that I mean an unreasonably high standard of care—you should disregard them.
“If you find they set a reasonable standard of care under the circumstances, then you should adopt that, then, as the minimum standard of care.
“If you find they unreasonably set too low of a standard of care, why, then you should look to all the circumstances and determine what you feel then should be a higher standard of care.”

Transcript, Vol. 119, page 14782, lines 3-28; page 14783, lines 1-14:

“But if you find there was a violation of a general tunnel safety order, you should look to the nature of it and the extent of that violation and ask yourself in the purview of that definition, that three-pronged definition I gave you, does that constitute gross negligence?
“Now, if you found the special safety orders in your own determination to be reasonable and to set a reasonable standard of care, you should ask yourself whether or not any of those special safety orders of Mr. Zavattero were violated.
“And again here ask yourself again if there was a violation—if you find from the facts there was a violation of the special safety orders, what was the extent of the violation and what was the nature of the violation and then compare that extent and nature of the violation with the definition of gross negligence that I have given you and the other following definition or the other instructions that I gave concerning gross negligence.
“Also with regards to a violation of the general tunnel safety orders—if you find from your view of the evidence that there was more than one violation of a general tunnel safety' order, then you should ask yourself whether or not coupled together the nature and extent of the violations are such as to constitute gross negligence. And the same would hold true, if you found that the special safety orders were reasonable and you find there was more than one of them violated, from your analysis of the evidence, then you should ask yourself whether or not coupled together they constituted gross negligence under the definition that I gave you.
“Now, if in your sole determination of the evidence you feel that as the night progressed and if you find that the conditions changed—and this is, of course, for you to determine—and you find that a standard of care higher than the general tunnel safety orders or higher than the special safety orders was necessary, then, of course, you should ask yourself whether there was a violation of that standard of care which you yourselves *Supp. 28 have set and then ask yourself if there was a violation—if you find there was a violation or deviation from that standard of care—again, what was the nature and what was the extent of that deviation from what you believed to be the standard of care.”

Section 6310 is now section 6306 of the Labor Code.

Now section 6306.

The entire comment begins at transcript, Volume 119, page 14772 and ends at page 14781.

In 1973, the Legislature again amended the Labor Code to include supervisory personnel (§§ 6423, 6425).