Opinion
THOMAS, J.*
Defendant Lockheed Shipbuilding and Construction Company (herein Lockheed) appeals from the judgment entered after Lockheed pleaded nolo contendere to 26 counts which charged violations of Labor Code sections 6400, 6401, 6402, 6404 and 6416, all misdemeanors. After entering the plea, Lockheed was fined on each of the 26 counts for a total on all counts of $106,250, including penalty assessment.
This is the third appeal before us arising from charges of Lockheed’s certain criminal activities in its construction of a tunnel. Upon a previous appeal by Lockheed (People v. Lockheed Shipbuilding & Construction Company (1975) 50 Cal.App.3d Supp. 15 [123 Cal.Rptr. 778]) from a conviction upon those same charges as are involved here (which conviction came after a very lengthy trial), we reversed the judgment for those reasons set out in our aforementioned opinion. Thereafter, Lockheed entered its nolo contendere plea to each of said counts, and after judgment was entered, prosecuted this appeal.
The ground for Lockheed’s present appeal is that “the sentence [which was] imposed . . . was violative of the California Penal Code § 654 bar *Supp.6 against multiple punishment for a single act, omission, or course of conduct.” We conclude that the judgment upon counts 1 through 16, 34, 86, 37, 38, 46 and 47 was proper and affirm the judgment as to those counts. However, we conclude that the punishment ordered concerning counts 39, 40, 48 and 49 was improper and modify the judgment as to these counts by staying execution of the sentence on said counts for the time and in the manner set out below.
Lockheed May Prosecute This Appeal.
Before addressing ourselves to the issue raised by Lockheed, we consider the effect of Lockheed’s nolo contendere plea on its ability to argue here that the sentence imposed violated Penal Code section 654 or otherwise was improper.[1]
The People assert that it is improper for this court to review a municipal court judgment after a nolo contendere plea (except upon matters not applicable here), and that, in any event, this court cannot examine the trial record when determining the propriety of a judgment relative to Penal Code section 654. Lockheed in turn asserts that it is not precluded by its plea from appealing on the ground that the judgment violates Penal Code section 654, and that this court may review the entire record from the original trial below in resolving the issue.
' We determine that Lockheed is correct in both its assertions. In Seiterle v. Superior Court (1962) 57 Cal.2d 397 [20 Cal.Rptr. 1, 369 P.2d 697], the defendant pleaded guilty to two counts of murder in the first degree and several other counts, including two counts of kidnaping for the purpose of robbery with bodily harm and one count of conspiracy to commit murder in the first degree. Thereafter, a trial was held on the sole issue of penalty and the juiy fixed the defendant’s punishment. On defendant’s appeal from that judgment, the Supreme Court reversed the trial court for certain described errors related to the penalty on the murder counts but only modified that portion of the judgment imposing sentences of life imprisonment for the offenses of kidnaping, remanding the matter for retrial of the penalty issue on the murder counts. Defendant unsuccessfully moved for dismissal of the murder counts on the ground that retrial of the penalty issue contravened the provisions of Penal Code section 654 precluding multiple prosecution after which he sought a writ of prohibition from the Supreme Court. In denying the *Supp.7 petition for a writ, the court considered in detail the evidence adduced at the penalty trial when determining the merit of defendant’s assertion that Penal Code section 654 precluded the court from further sentencing him.
In People v. Rosenberg (1963) 212 Cal.App.2d 773 [28 Cal.Rptr. 214], the defendant pleaded guilty to two counts, one for grand theft on or about April 20, 1961, and the other for forgery of a fictitious name on or about the same day. From the judgment on the two counts, defendant then appealed, contending on page 775 that “both violations of law arose out of but one single course of conduct....” In determining that defendant could raise the issue after a guilty plea and that the court could examine a probation report to determine the applicability of Penal Code section 654, the court said at page 776, “However, if matter is before the trial court which suggests the probability that the several offenses constituted a course of conduct comprising an indivisible transaction, that court must pursue the matter further so that the question so raised may be resolved in harmony with the provisions of section 654 of the Penal Code and the reasoning of the Neal [v. State of California (1960) 55 Cal.2d 11 (9 Cal.Rptr. 607, 357 P.2d 839)] case.” Although both above cases involved the review of a superior court judgment, we are directed to no authority which would make the principles set out above inapposite to this appeal from the municipal court judgment. (We find no help for the People’s assertion in People v. Rawlings (1974) 42 Cal.App.3d 952 [117 Cal.Rptr. 651], on which People rely.) Thus, we hold that Lockheed’s plea does not preclude it from raising the issue of the validity of the judgment relative to Penal Code section 654 and that we must examine the trial record to determine whether among the several counts to which Lockheed pleaded are two or more which are based on the same act or course of conduct.[2]
We are aware that in Seiterle v. Superior Court, supra, the court said (57 Cal.2d at pp. 400-401), “By pleading guilty to all [the charged offenses] . . . without reserving, or attempting to reserve in any fashion, the question whether the [offenses] . . . constituted indivisible transactions so as to prevent their double punishment under Penal Code section 654, [appellant], ... at least prima facie, admitted that the crimes were separate and not indivisible.” And in People v. Rosenberg, supra, the court restated the principle (212 Cal.App.2d at pp. 775-776). However, neither court discussed the meaning of its “prima facie” admission rule and in both cases the courts, without further mention of the rule, discussed the evidence (facts in the probation report in People v. *Supp.8 Rosenberg, supra) in some detail when determining the applicability of Penal Code section 654. The reporter’s transcript reveals that, at the time of sentencing, Lockheed clearly did all it could to raise the issue of Penal Code section 654. Thus, whatever the implication in the above cases may be that a defendant’s failure to reserve a Penal Code section 654 issue at time of sentencing waives it, said rule cannot apply here in view of Lockheed’s consistent assertions of the applicability of Penal Code section 654.
Factual Bases for the Counts to Which Lockheed Pleaded
The several counts in the complaint against Lockheed arise from certain incidents which occurred on June 22-24, 1971, during the construction of a tunnel near Sylmar, California. The construction was under the supervision of Lockheed who was the general contractor and was for the use of the Metropolitan Water District in the transfer of water.
The tunnel excavation was done by operation of a 162rfoot long mining machine which simultaneously scooped the earth out of the tunnel and formed its walls in concrete and steel. The earth or “muck” was scooped from the tunnel face and carried on a conveyor belt to rail cars. Of the total tunnel length of 5.5 miles all but approximately 2,000 feet had been completed by June 22, 1971.
The nature of the charges against Lockheed and the application of Penal Code section 654 to certain of those charges can be understood better if the relevant time span is divided into four periods and each of the charged criminal activities in the several counts is assigned to one of said periods.[3]
1. June 22, 1971
During the swing shift on June 22, 1971, a strong odor similar to kerosene or diesel fuel was present in the tunnel, causing eye, nose and throat irritation. There was testimony that such odors may or may not indicate the presence of flammable gases. The odor became stronger as the shift continued and demands were made of a Lockheed supervisor to have gas tests made. The supervisor discounted the problem, explaining that the odors were probably not caused by flammable gas. He did order *Supp.9 tests made and the tester testified that no positive readings were obtained for flammable gas. There was also testimony, however, that the tester was inexperienced and that one worker saw a high reading obtained which was never reported.
Count 34, charging violation of Labor Code section 6401, relates to this period.
2. June 23 from midnight to approximately 2:09 a.m.
During the graveyard shift the odor continued to be strong and gas testing continued. (The testing was done with a device called an Explos-A-Meter; the dial is calibrated on a scale of 0 to 100 percent of the lower explosive limit. Any reading in the red zone of 60 percent to 100 percent is highly volatile and highly dangerous.) During this period, readings of up to 19 percent were obtained. The 19 percent reading was reported while a Lockheed supervisor was standing close enough to hear, but he later denied knowledge of a 19 percent reading. When the tester reported gas readings to a supervisor, as he was required to do, the supervisor made fun of the requirement. During this time, welding activity was taking place 20 feet from the tunnel face, in the midst of the gassy odors.
At 2:09 a.m., a flash fire occurred, injuring three workers. All personnel immediately evacuated the tunnel.
Count 86, charging violation of Labor Code section 6401, relates to this period.
3. June 23 from approximately 3 p.m. to end of swing shift
Following the evacuation of the tunnel, a state safety engineer was called and an inspection of the tunnel was made in the company of the state engineer. Meetings were then had with the safety engineer at which he permitted operations to resume if certain conditions were met. There was to be continuous testing for gas and he (the state safety engineer) was to be called if there was a reading over 20 percent. A reading over 40 percent was to cause the operation to shut down again. A new test hole was to be drilled.
After Lockheed agreed to the above conditions, work resumed on the swing shift beginning at 3 p.m. Once again, the employees experienced eye, nose and throat irritation and the smell of crude oil. As soon as operations began, a gas reading of 10 percent was obtained over the *Supp.10 muck and a 100 percent reading in the muck pile itself. A Lockheed supervisor observed these readings. Following this, a reading of 20 percent to 35 percent was obtained in the atmosphere on the left side. When the Lockheed supervisor was informed of this, he ordered future tests to be made on the right side. When the tester suggested taking air samples for laboratory analysis, the supervisor told him to wait until the next day. Making his readings on the right side as ordered, the tester stopped the operation each time the reading was over 20 percent, a total of 30 to 35 times, starting up again when the reading went down. The tester informed the supervisor at least four times that readings of over 40 percent had been obtained, but the supervisor never closed the job down, never evacuated, and never called the state safety inspector.
At one point, a Metropolitan Water District inspector told the Lockheed supervisors that he wanted to shut the operation down. He was told that it would not .be done without a written order from the inspector’s superior. The inspector stated that he did not try to get such an order because, by the time he could do so, the tunnel already would have blown up.
At about 9:15 p.m., the automatic air pump for the Explos-A-Meter broke down and testing had to be done with a manual pump for the remainder of the shift. This meant that testing was no longer continuous, as had been ordered. The supervisor was aware of this. No effort was made to drill a new gas testing hole, as had been ordered by the state engineer.
Count 37, charging violation of Labor Code section 6400, count 38 charging violation of Labor Code section 6401, count 39, charging violation of Labor Code section 6402, and count 40 charging violation of Labor Code section 6404, relate to this period.
4. Commencement of graveyard shift on June 23 to explosion on June 24
After the graveyard shift took over approximately 11:15 p.m. on June 23, the offensive odor was noted to continue. The gas tester hooked the Explos-A-Meter up to a new automatic air pump but was later observed making tests with a manual air bulb instead of the automatic pump. The tester made the statement that if the gas got any higher, they would have to leave. Shortly thereafter, but after midnight, the explosion occurred, resulting in the deaths of 16 Lockheed employees and 1 Metropolitan Water District employee. Half the deaths were caused by traumatic injuries and half by acute carbon monoxide intoxication.
*Supp.11 Count 46, charging violation of Labor Code section 6400, count 47, charging violation of Labor Code section 6401, count 48, charging violation of Labor Code section 6402, and count 49 charging violation of Labor Code section 6404, relate to this period.
The deaths of Lockheed’s employees form the bases of counts 1-16, each charging that Lockheed’s gross negligence in failing to provide a safe place of employment of the individual named in each count caused his death and was a violation of Labor Code section 6416.
Statutes
The statutes with whose violation Lockheed was charged read at the time of the olfenses:
Labor Code section 6400: “Every employer shall furnish employment and a place of employment which are safe for the employees therein.”
Labor Code section 6401: “Every employer shall furnish and use safety devices and safeguards, and shall adopt and use practices, means, methods, operations, and processes which are reasonably adequate to render such employment and place of employment safe. Every employer shall do every other thing reasonably necessary to protect the life and safety of employees.”
Labor Code section 6402: “No employer shall require, or permit any employee to go or be in any employment or place of employment which is not safe.”
Labor Code section 6404: “No employer shall occupy or maintain any place of employment that is not safe.”
Labor Code section 6416: “Every employer who, through his gross negligence in failing to provide a safe employment and place of employment, causes the death of his employee is punishable by imprisonment in the county jail for not more than one year or by a fine of not less than one thousand dollars ($1,000) nor more than five thousand dollars ($5,000).”[4]
*Supp.12 Discussion
That the several counts to which Lockheed pleaded cover four distinct time periods within three days and embrace five separate statutes precludes a single resolution of the issue on this appeal. Rather, the applicability of Penal Code section 654 to preclude imposition of punishment on some number of counts less than the 26 to which Lockheed pleaded must be resolved under a number of circumstances which we consider below.
1. Can Lockheed be sentenced for more than one violation of Labor Code section 6416?
Lockheed contends that although counts 1-16 each allege a different victim as the basis for charging Lockheed’s 16 violations of Labor Code section 6416, it may be sentenced under only one of said counts. We reject said contention and conclude that the trial court properly sentenced Lockheed under each of counts 1-16. We reach this by construing Labor Code section 6416 to be among those statutes which permit punishment in accordance with that general rule which we discuss below.
The general rule is that a defendant’s single act of violence by means likely to harm more than one victim and which does injure several victims permits separate punishment because of each victim. Neal v. State of California (1960) 55 Cal.2d 11, 20-21 [9 Cal.Rptr. 607, 357 P.2d 839]; People v. Beamon (1973) 8 Cal.3d 625, 638 footnote [105 Cal.Rptr. 681, 504 P.2d 905]. This general rule applies also when during a defendant’s indivisible course of conduct, even while he entertains a single principal objective, he commits crimes of violence against different defendants. People v. Miller (1977) 18 Cal.3d 873, 885 [135 Cal.Rptr. 654, 558 P.2d 552]. Further, the rule applies even if the act or course of conduct is negligent and a misdemeanor. (People v. De Casaus (1957) 150 Cal.App.2d 274, 280 [309 P.2d 835], cert, den., 355 U.S. 890 [2 L.Ed.2d 189, 78 S.Ct. 262].)
Our courts have rested this rule on the greater culpability, deserving greater punishment, of the actor when multiple victims are involved (People v. Miller, supra, p. 885; Neal v. State of California, supra, p. 20);[5] *Supp.13 on the state’s concern in redressing the harm (“outrage”) to the several victims (see People v. Lobaugh (1971) 18 Cal.App.3d 75, 79 [95 Cal.Rptr. 547]) or on the need to deter personal harm (see People v. Guerin (1972) 22 Cal.App.3d 775, 782 [99 Cal.Rptr. 573], cert, den., 409 U.S. 859 [34 L.Ed.2d 105, 93 S.Ct. 145]). The People argue that Labor Code section 6416 is a statute of this type and permits multiple punishment for Lockheed’s gross negligence which claimed several victims.
Lockheed argues, however, that Labor Code section 6416 is a safety statute designed merely to prevent (by punishing) an employer’s grossly negligent maintenance of the place of employment and that violation of the statute’s direction is a single offense for which there may be only a single punishment, relying on People v. Lobaugh, supra. In that case the court considered the legality of separate punishment under Vehicle Code section 23101 on account of each of the three victims of that defendant’s drunken driving. In holding that the defendant could not be punished separately for the injury done to each victim, the court refused to construe Vehicle Code section 23101 to be one of those statutes designed to express society’s “outrage” for the act causing injury to multiple victims and thus permitting a punishment on account of each victim; rather it held that violation of the statute was a single offense which permits only single punishment, regardless of the number of victims, saying at pages 79-80: “We have concluded that a person who has violated section 23101 whether one, or several, persons be injured thereby, has committed but one offense. Unlike the usual ‘multiple victim’ case, here the fundamental concern of the state is not the outrage done the victims, but rather the prevention of ‘drunken driving’ and the punishment of those who so conduct themselves. It was said in People v. Chatham, 43 Cal.App.2d 298, 300 [110 P.2d 704] (referring to Veh. Code, § 501, predecessor to § 23101), ‘. . . it is not the receiving of the injury that concerns the state, but the causing of such injuries which the state seeks to minimize.’ The unlawful act denounced by the Vehicle Code is *Supp.14 the ‘mere act of driving a vehicle upon a public highway while intoxicated’;...”
We are not persuaded that Labor Code section 6416 was solely a “safety statute” whose purpose was to prevent an employer from failing to provide a safe place of employment to his employees. First, such a statute was unnecessary; Labor Code sections 6400, 6401, 6402 and 6404 (sometimes herein collectively referred to as “the safety provisions”) more than adequately required an employer to provide a safe place of employment; second, the physical positioning of section 6416, several sections away from the safety provisions, and that section 6416 was not enacted until 1963 whereas the safety provisions were enacted in 1937, indicate that the Legislature had something in mind different from another expression of concern for a safe place of employment when it enacted section 6416; and third, the premise for liability under section 6416 was quite different from that for liability under the safety provisions. The safety provisions ordered a safe place of employment or use of devices upon pain of committing a misdemeanor (Lab. Code, § 6414) without necessity for the state to show the employer’s intent to do the prohibited act or his criminal negligence. (See 1 Witkin, Cal. Crimes (1963 ed.) § 62 et seq. classifying this type as a “public welfare” offense.) Section 6416, however, required a showing of gross negligence by the employer which caused the death of the employee. The difference is significant. The requirement in section 6416 that the actor’s mens rea (gross negligence) be coupled with the prohibited act persuades us that section 6416 created, within the employer-employee relationship, what 1 Witkin, California Crimes, supra, section 52, terms a “true crime (as distinguished from ‘regulatory’ or ‘public welfare’ offenses),” of the traditional manslaughter type. From all of the above, we conclude that section 6416 was not simply another legislative expression of concern for an employer’s maintenance of an unsafe place of employment, of purpose similar to the statute in People v. Lobaugh, supra, but was intended to express outrage for homicides committed through an employer’s gross negligence and thus permits separate punishment for the death for each employee-victim.
We have no hesitancy in concluding that the explosion was an act of violence. Thus, separate punishment under section 6416, because of each employee-victim, is permissible.
Construing Labor Code section 6416 and the nature of the violation thereof as we do, consideration of Penal Code section 654 is irrelevant, for that section prohibits punishment under more than one statute of an *Supp.15 act which is made punishable in different ways by different statutes.[6] We affirm the sentences under counts 1-16.
2. Does the sentencing of Lockheed for violation of Labor Code section 6416 preclude it from being punished for violation of one or more among sections 6400, 6401, 6402 and 6404?
Lockheed contends that because violations of sections 6400, 6401, 6402 and 6404 are necessarily included offenses within section 6416, punishment under one or more counts based on section 6416, precludes.it from being punished for violations of the other statutes. We disagree that counts 34, 86, 37, 38, 46 and 47 allege offenses which constitute included offenses within those alleged in counts 1-16.[7] Counts 1-16, based on section 6416, concern the deaths resulting from the explosion on June 24. These causes relate to no other time or event. However, counts 34, 86, 37 and 38 relate to conditions and activities on preceding days. Obviously, these are not lesser included offenses within counts 1-16. While counts 46 and 47 relate to a condition and activities on June 24, 1971, and are pleaded in general terms, the evidence indicates that said offenses very well may have been committed in time and manner entirely distinct from the acts or omission upon which counts 1-16 are based. To illustrate, as we discuss in more detail infra 3, section 6401 placed on Lockheed the duties to use safety devices and to adopt and use practices to render the employment safe, and a violation of this statute undoubtedly occurred on June 24 when the tester shifted from the automatic air pump to the manually operated bulb. Obviously, this shift itself did not make the tunnel an unsafe place; thus, the basis for violation of section 6401 on June 24 was entirely different from the basis for violation of section 6416.
*Supp.16 Further, section 6400 undoubtedly was violated at all times when the offensive odor existed, for we may infer that at all those times the place of employment was harmful to the employees’ general health; but that condition existed apparently well before there was a sufficient gas buildup to trigger the explosion on which the violation of section 6416 is based. Thus, even on June 24 a violation of section 6400 occurred independently of a violation of section 6416. Under these circumstances we cannot conclude that counts 46 and 47 charge offenses included within counts 1-16.
Lockheed further contends that, in any event, the charged offenses occurred during a single, indivisible course of conduct, and after punishment under section 6416 had been ordered, Penal Code section 654 precludes punishment under any other statute. But we disagree, for we do not conclude that Lockheed pursued a single indivisible course of conduct during June 22-24. The tunnel’s condition as a safe place of employment fluctuated as gases collected and dispersed (for example, operations were halted from 30 to 35 times during the swing shift on June 23). The gases accumulated more heavily in some portions of the tunnel than others. The testing procedures varied and the supervisors appeared to react inconsistently to the many reports of gaseous conditions. All this evidences that Lockheed’s agents simply were attempting to deal, in one way or another, with a variety of conditions within the tunnel as these conditions arose and receded. The recited activities, although fairly close in time, do not constitute a continuous course of conduct. (Our discussion of the law concerning acts closely related in time, which we set out infra 4, is applicable here; also, the distinctions which we make above between those acts constituting violations of sections 6400, 6401 and 6416 on June 24 are applicable to answer Lockheed’s “course of conduct” argument as it may be made to Lockheed’s activities on June 24.) Thus, Penal Code section 654 does not preclude punishment under both section 6416 and one or more among the other statutes upon which counts other than 1-16 are based.
3. May Lockheed be punished under more than one among Labor Code sections 6400, 6401, 6402 and 6404?
Lockheed contends that Penal Code section 654 precludes its punishment under more than one among Labor Code sections 6400, 6401, 6402 and 6404, arguing that because its activities during the relevant period stem from “the single, indivisible course of conduct” only one violation occurred, analogizing its continuing conduct to those violations from engaging in bookmaking, occupying a room with betting paraphernalia *Supp.17 and recording bets which were described as one course of conduct in People v. Barthel (1965) 231 Cal.App.2d 827, 836 [42 Cal.Rptr. 290],
We divide this contention into two. Presently we discuss whether Lockheed may be punished for violations of each among sections 6400, 6401, 6402, and 6404, reserving for infra 4 our discussion concerning the appropriateness of multiple punishment for violation of the same statute in two or more time periods.
Turning to the statutes, we are unable to discern any difference beyond semantics in Labor Code sections 6400 and 6402. Both require that an employer provide employment and maintain a place of employment for his employees which are safe. Section 6404 prohibits an unsafe place of employment. Thus, on their face, sections 6400 and 6402 appear to be of identical application and section 6404 appears also to be applicable to those provisions of sections 6400 and 6402 concerning a safe place of employment. In the instant case, the culpable acts of Lockheed to which the several counts alleging violations of sections 6400, 6402 and 6404 pertain appear to be in the failure to maintain a safe place of employment. Thus, we conclude that where violations of sections 6400, 6402 and 6404, or any two of them, were alleged to have occurred, Lockheed may be punished for violation of only one among these three statutes, for punishment based on counts alleging violations of two or more among said statutes is prohibited by Penal Code section 654.
Under this ruling, the sentencing orders upon counts 37 and 46 (the validity of which we discuss infra 4) may stand, but the sentencing orders upon counts 39, 40, 48 and 49 will be stayed. (See post Modification of the Judgment.)
However, Labor Code section 6401 is different from each among sections 6400, 6402 and 6404 in that section 6401 requires the employer to “furnish and use safety devices and safeguards, and . .. adopt and use practices, means, methods, operations and processes which are reasonably adequate to render such employment and place of employment safe.” This statute is directed not to the place of employment but to the use of adequate devices and practices. A violation of section 6401 may occur independently of whether the place of employment actually is rendered unsafe herein. For example, on June 22, 1971, the tester for flammable gas was inexperienced. On June 23, before 2:09 a.m., welding activities took place in the midst of gassy odors. On June 23, after approximately 9:15 p.m., the automatic air pump broke down and testing was done with a manual pump, which was done also on June 24. All of these activities constituted violations of Labor Code section 6401 *Supp.18 without requiring a finding that each faulty device or practice actually made the tunnel unsafe. Thus, punishment under section 6401 properly may be given together with punishment under section 6400.
4. May Lockheed be punished upon more than one count among several which allege violation of the same statute?
Counts 37 and 46 each allege a violation of Labor Code section 6400 on June 23 and 24 respectively. Counts 34, 86, 38 and 47 allege violations of Labor Code section 6401 on June 22, June 23 prior to 2:09 a.m. and after 3 p.m. and on June 24, respectively. Appellant now contends that it is improper to punish violations of a single statute more than once. We disagree, however, and affirm the sentencing order on each said count.[8]
Each violation of section 6401 is supported by evidence that a separate, divisible act took place upon which each among counts 34, 86, 38 and 47 is founded. (See examples, ante 3.) Similarly, the counts alleging a violation of section 6400 in two time periods are supported by evidence that the safety of the tunnel varied from time to time as gases collected and were dispersed and test results were acted upon or ignored by Lockheed supervisors. (Also discussed, ante 3.) It appears very likely that several distinct, separate violations of each statute took place in each time period.
That the several violations of both sections 6400 and 6401 were within a relatively short period does not make them within a single course of conduct. In People v. Hernandez (1966) 242 Cal.App.2d 351, 358-362 [51 Cal.Rptr. 385], the court affirmed a finding of defendant’s guilt on two counts of manslaughter (unlawful killing while driving under the influence of intoxicating liquor) and one count of driving while intoxicated where the entire time span of defendant’s activities occupied no more than approximately 20 minutes. The conviction for driving while intoxicated was based upon evidence from which defendant’s intoxicated condition could be inferred when he passed a truck driven by a man named Kennedy. The conviction on the 2 counts of manslaughter was based upon evidence that between 15-20 minutes thereafter, *Supp.19 Kennedy saw the defendant’s car in flames following the collision which resulted in the manslaughter charge. The court said, at page 361, “. . . defendant’s act of driving while intoxicated when he passed the Kennedy truck and his subsequent act of driving while intoxicated which resulted in the collision and the death of two persons, did not constitute a single physical act nor a course of conduct comprising an indivisible transaction.
“Multiple offenses based on separate and distinct acts may be subject to multiple punishments even though these acts Vere closely connected in time and a part of the same criminal venture. . . .’ Neal v. State of California, 55 Cal.2d 11, 20 [9 Cal.Rptr. 607, 357 P.2d 839]; In re Chapman, ... 43 Cal.2d 385, 389 [273 P.2d 817]. The defendant’s act of driving an automobile while intoxicated at the time he passed the Kennedy truck and his act of driving an automobile while intoxicated at the time of the subsequent collision, were sufficiently separate in time and place to support the conclusion that the act of driving on the first occasion was separate and distinct from the act of driving on the second occasion even though his state of intoxication was continuous.”
Whether a course of conduct comprises an individual transaction may be determined by the intent and objective of the defendant. (People v. Hernandez, supra, p. 361.) In light of the evidence of Lockheed’s various (and varying) acts and the changing conditions in the tunnel, making it rapidly fluctuate between a safe and unsafe place of employment, we cannot conclude that Lockheed was engaged in a single course of conduct; rather, multiple violations of the same statute occurred and each is punishable.
Modification of the Judgment
In People v. Miller, supra, 18 Cal.3d at page 885, the court points out that “Section 654 does not preclude multiple convictions but only multiple punishments for a single act or indivisible course of conduct.” Thus, we determine that judgment on counts 39, 40, 48 and 49 was not improper.
However, in People v. Miller, supra, at page 886, the court also said, “When a defendant suffers multiple convictions, sentencing for some of which is precluded by operation of section 654, an acceptable procedure is to sentence defendant for each count and stay execution of sentence on certain of the convictions to which section 654 is applicable. Such stay is to be effective pending the successful service of sentence for the more serious conviction, at which time the stay is to become permanent *Supp.20 [citation].” We follow that suggested procedure here. Thus, we affirm the entire judgment, but order stayed execution of the sentence (fine and applicable portion of the penalty assessment,)(Pen. Code, § 13521) concerning counts 39, 40, 48 and 49 until the sentence (fine and penalty assessment) on each other count has been satisfied, at which time the stay of the sentence on counts 39, 40, 48 and 49 will become permanent.
Cole, P. J., and Alarcon, J., concurred.

 Assigned by the Chairman of the Judicial Council.

 A nolo contendere plea is treated as a guilty plea. Penal Code section 1016, subdivision 3. Thus, when discussing certain decisions, we make no distinction between guilty and nolo contendere pleas. Further, hereinafter we refer to Lockheed’s nolo contendere plea to each count as simply “plea.”

 The several counts are pleaded very largely in statutory language with minimum factual allegations.

 Factual recitations are synopsized from the parties’ briefs.. See also People v. Lockheed Shipbuilding & Constr. Co. 11975) 50 Cal.App.3d Supp. 15 [123 Cal.Rptr. 778] for a statement of certain factual matters.

 Labor Code sections 6400, 6401, 6402 and 6404 were repealed and reenacted with substantially the same language as of October 1, 1973. Section 6416 was repealed as of October 1, 1973, and section 6423 was enacted in its stead.

 Thus, in Neal v. Stale of California, supra, pages 20-21, the court said: “In the instant case the arson was the means of perpetrating the crime of attempted murder .... The conviction for both arson and attempted murder violated Penal Code, section 654, since *Supp.13 the arson was merely incidental to the primary objective of killing Mr. and Mrs. Raymond. Petitioner, therefore, can only be punished for the more serious offense, which is attempted murder.
“The two attempted murder convictions, however, present a different problem. The purpose of the protection against multiple punishment is to insure that the defendant’s punishment will be commensurate with his criminal liability. A defendant who commits an act of violence with the intent to harm more than one person or by a means likely to cause harm to several persons is more culpable than a defendant who harms only one person. For example, a defendant who chooses a means of murder that places a planeload of passengers in danger, or results in injury to many persons, is properly subject to greater punishment than a defendant who chooses a means that harms only a single person....
“The two consecutive attempted murder convictions were therefore properly imposed.”

 In Neal v. State of California, supra, 55 Cal.2d, page 20, the court said: “This distinction between an act of violence against the person that violates more than one statute and such an act that harms more than one person is well settled. Section 654 is not ‘. . . applicable where . . . one act has two results each of which is an act of violence against the person of a separate individual.’ (Citations:) Thus, in People v. Knowles, 35 Cal.2d 175, 187 [217 P.2d 1], the defendants kidnapped two persons for the purpose of robbing them. The robbery convictions were reversed by reason of Penal Code, section 654, but both convictions were affirmed.”
And in People v. Beamon, supra, 8 Cal.3d, page 638, footnote 10, the court said: “The Brown-Neal test has generated a number of refinements in the area where the test is applicable. Thus in Neal, there were two victims and we affirmed as to the attempted murder conviction of each victim holding that the Legislature could not have intended that section 654 be applicable where the course of conduct results in acts of violence which constitute separate violations as to separate individuals. The net effect of our holding in that case was that where multiple acts of violence occur against multiple victims, the course of conduct is divisible.”

 We do not discuss here counts 39, 40,48 and 49 because of our discussion infra 3.

 Our analysis of the acts upon which the several counts are based makes it unnecessary for us to consider the effect of Labor Code section 6415 (repealed Oct. 1, 1973) which during the relevant time read, “Every violation of any provision of this chapter or any part thereof, and each days’s continuance thereof is a separate and distinct offense.” Thus, we do not reach Lockheed’s contention that although section 6415 may permit multiple convictions for acts committed during a single course of conduct, Penal Code section 654 nonetheless bars multiple punishment thereof.