[No. H001968. First Dist., Div. Two. June 7, 1988.]

THE PEOPLE, Plaintiff and Appellant, v.
LEONARD JOHN ROSS et al., Defendants and Appellants.

**[Opinion certified for partial publication.\*]**

---

*Pursuant to rules 976 and 976.1, California Rules of Court, this opinion is certified for publication with the exception of parts II.-VI.

**COUNSEL**

John K. Van de Kamp, Attorney General, Steve White, Chief Assistant Attorney General, John H. Sugiyama, Assistant Attorney General, Stan M. Helfman and Sharon G. Birenbaum, Deputy Attorneys General, for Plaintiff and Appellant.

Philip A. Pennypacker, Debra R. Huston, Michael A. Kresser and Mark E. Cutler for Defendants and Appellants.

**OPINION**

**KLINE, P. J.—**

### INTRODUCTION

Leonard J. Ross and Ronald Ross each appeal judgments of the Santa Clara County Superior Court, following their pleas of guilty to numerous felony counts. Both appellants contend: (1) the court had no authority to

conduct a postplea Penal Code section 654[1] evidentiary hearing and all evidence produced at that hearing must be disregarded; (2) the court violated Penal Code section 654 when it sentenced them for numerous offenses.

The People also appeal, contending that the court erred in holding that section 654 precluded sentencing Leonard Ross for both the robbery of the officer and possession of a firearm by a felon.

## FACTS

### *Car theft and flight of Leonard Ross*

On September 21, 1985, Leonard Ross approached Roxanne Martinez in the parking lot of a San Jose import store. He demanded that she give him the keys to her 1984 Corvette. She refused, and after a struggle, he grabbed the keys from her hand, jumped into the Corvette and drove away.

Martinez flagged down a passing police officer, Denise Pereira, who gave chase. At one point, Officer Pereira lost sight of the Corvette, but a few minutes later located it again. Ross entered the on-ramp for highway 280, driving erratically at speeds of from 95 to 100 miles per hour, continuing to ignore Pereira's emergency lights and siren. Pereira tried to slow Ross by forcing the Corvette toward the center divider. During this procedure, her car hit the Corvette. Ross then abruptly moved away from Pereira, accelerating rapidly and crossing all lanes of the freeway. In doing so, he hit Pereira's fender and spun out, colliding with a pickup truck driven by Reed Mullin. The impact caused Mullin's truck to flip over in mid-air. It landed on its hood and eventually turned upright. Mullin suffered head contusions, back abrasions and bruises. Pat Christiansen, a passenger in the truck, was also injured. The Corvette had gone off the side of the road and down an embankment. Leonard Ross climbed through a window and fled the scene. Police units in the area soon saw him walking on Northlake Boulevard, and took him into custody. Leonard Ross refused to identify himself to the arresting officer. In searching Ross's wallet for identification, the officer found two paper bindles containing cocaine.

### *Possession of PCP by Ronald Ross*

On October 10, 1985, Ronald Ross was arrested for being under the influence of PCP. A routine search turned up additional PCP and evidence that it was possessed for sale. A blood sample taken from him tested positive for PCP.

---

[1] Unless otherwise indicated, all further statutory references are to the Penal Code.

*Assault, robbery, and attempted murder of Officer Esparza by Leonard and Ronald Ross*

On November 2, 1985, at approximately 12:45 a.m., the Santa Clara County Communications Center received a 911 emergency call. The dispatcher heard a male voice say "yeah" and the line then went dead. The call was traced to a pay phone at a small market in San Jose. Dispatchers attempted to call back, but received no answer. Police officer David Esparza was immediately dispatched to determine if there was an emergency.

When Esparza arrived at the scene he saw Leonard and Ronald Ross near a wall close to the phone booth. Ronald Ross was bent over with Leonard Ross supporting him. While standing by the door of his car, Esparza asked appellants what the difficulty was. Leonard Ross beckoned the officer, saying "come here, my partner is all fucked up." Esparza began to walk towards the two. When he was eight to ten feet away from them, he saw a tire iron protruding from Ronald Ross's coat. As Esparza began to back away, Ronald Ross swung the tire iron at him and then, with Leonard, began to chase Esparza. Esparza ran across Park Avenue while Ronald Ross continued to try to hit him with the tire iron. In the process of retreating, Esparza's baton fell from his side and rolled into the gutter.

At that point, Esparza decided to try to take the tire iron away from Ronald. He lunged forward attempting to wrestle the tire iron away when he was tackled by Leonard Ross, causing all three to fall to the ground. One of the defendants yelled, "Get it. Get the gun." Esparza could feel Leonard Ross pulling at his holster, Esparza immediately focused his attention on retaining control of his gun. As he attempted to keep Leonard Ross away from the weapon, Ronald struck Esparza several times about his head and shoulders with the tire iron. Esparza's gun was now loose from his holster and he and Leonard engaged in a struggle for it. Esparza finally lost his strength and the weapon was wrested from him.

Esparza was lying on his back, and Leonard was holding the gun, which was approximately eight to ten inches from the officer. Esparza started to crawl away when he heard a shot fired. Although he felt the percussion of the blast, he did not know whether he was hit. When he had moved about eight feet away and was rising to his feet, Esparza heard another shot. Again, he could not tell whether he had been hit. While moving to try to stay out of the line of fire, Esparza looked over his shoulder and saw Leonard holding the gun in a combat stance—knees slightly bent and both hands on the gun.

Esparza, then on his feet facing defendants, continued to move away from them as Leonard followed his movements with the gun. Esparza was apparently moving across the street where there was a building wall. In his

testimony at an evidentiary hearing on Penal Code section 654 issues, Esparza explained that he knew he wanted to get away from Leonard and was definitely not intentionally moving toward him. He was moving back and forth in a zigzag pattern, trying to avoid the aim of Leonard's gun. He had no intention at this point of trying to retrieve his gun.

Esparza was about 12 feet away when Leonard fired another shot. He then saw defendants start to run down the street. He was not aware of any other shots being fired; although another witness heard four shots.

After calling for help, Esparza checked himself, found he was bleeding from the back of the head, and determined a bullet had entered his back, just to the right of his spine, and exited from his right shoulder.

A perimeter was established and a command post set at the intersection of Race and San Carlos Streets. Shortly after 1 a.m., a citizen reported he saw an individual on the roof of the Old World Ironworks building. Officers, including Officer Randall Spitze, entered the rear yard of a nearby residence and saw one of the defendants on the roof of the Ironworks building. Although Officer Spitze ordered him down, the defendant fled. Spitze proceeded to Pacific Avenue where, after approximately 15 to 45 minutes, he saw Leonard Ross running eastbound carrying a revolver. He ordered Leonard to put down the weapon. Leonard instead ran across the street, hid behind a parked car, and shouted, "fuck you, kill me." He then fired two shots at Spitze. As Spitze started to fire his gun, appellant threw the gun down, put his hands up and yelled, "Kill me. Kill me." Leonard was arrested. The gun was identified as that taken from Esparza. Ronald Ross was subsequently found hiding under a porch not far away.

At the site of the assault on Esparza investigators found three expended bullet casings, one in the exterior wall of an adjacent building, one on the ground near the same building and one in the interior of the building. Police officer John Fleming testified that by using a laser he had been able to reconstruct the path of the bullets and the approximate area where Leonard stood when he fired the gun. There was one bullet which apparently never hit the building. Of the three that did, Fleming testified that the person firing the third shot was about 45 feet from where the first and second shots were fired.

Detective Sergeant Kenneth Womack interviewed Leonard Ross at the police station. He asked why Esparza had been attacked and Leonard replied that he and his brother wanted to steal a gun and had been unable to succeed, so they decided to take one from a police officer. According to Womack, Leonard had explained that because he could not find work he and his brother wanted to steal a gun and a fast car, commit some robberies, and then leave California to start a new life. Womack later acknowledged

that Leonard had not mentioned anything about stealing a car. That part of the information was obtained by Womack from Ronald Ross in a separate interview. Ross said he and his brother planned to steal a gun, obtain a fast car, commit a robbery to get some money, and then go to Canada to start a new life.

At the preliminary examination, statements made by Ronald Ross were admitted only against him. However, at the superior court section 654 hearing, the court ruled that statements made by each defendant were admissible against both defendants.

### STATEMENT OF THE CASE

As a result of the foregoing events a consolidated information was filed charging the Ross brothers with the following offenses, all but the last of which included enhancement allegations under sections 12022, subdivision (b) (use of a deadly or dangerous weapon) or 12022.7 (infliction of great bodily injury): conspiracy to commit robbery (§§ 182, subd. 1,211); robbery (§ 211); attempted murder (§§ 664/187); and assault upon a peace officer with a deadly weapon (§ 245). In addition, Leonard was charged with possession of a concealed firearm by a person previously convicted of possession of a controlled substance (§ 12021, subd. (a)); robbery of an automobile (§ 211); driving or taking an automobile not his own (Veh. Code, § 10851, subd. (a)); flight from a pursuing peace officer causing injury of another (Veh. Code, 2800.2); possession of a controlled substance (Health & Saf. Code, § 11350, subd. (a)); and hit and run (Veh. Code, § 20001).

■■■■ On February 27, 1986, after two cases involving only Ronald Ross had been assigned to a courtroom for trial, Ronald withdrew his pleas of not guilty and entered a plea of guilty to all counts and admitted all enhancement allegations, conditioned upon a maximum prison term of 11 years and 8 months (reduced from a possible maximum of 14 years and 8 months), the actual term to depend upon the court's evaluation of the law regarding multiple punishment under Penal Code section 654.[2]

On March 4, 1986, the date the jury trial for Leonard Ross was to begin, Leonard also withdrew his pleas of not guilty and entered a no contest plea to all counts and enhancement allegations.[3] The plea was conditioned on his receiving no more than a maximum term of 19 years and 8 months in state

---

[2] Where a defendant pleads guilty without reserving or attempting to reserve the question of whether the offenses constitute an indivisible transaction, the defendant admits, at least prima facie, that the crimes were separate and not indivisible for purposes of section 654. (*Seiterle* v. *Superior Court* (1962) 57 Cal.2d 397, 400-401 [20 Cal.Rptr. 1, 369 P.2d 697].)

[3] A no contest plea is treated as a guilty plea. (§ 1016, subd. 3.)

prison, the actual term again to depend upon the court's determination of the section 654 multiple-punishment issues.

On April 18, 1986, at the request of the district attorney, and over objection of defense counsel for Leonard and Ronald, the court ruled that it would hold a hearing on the application of section 654, at which both prosecution and the defense would be able to present testimony and other evidence regarding the case to assist the court in determining whether the sentence for any of the defendants' counts would be stayed. Both the prosecution and defense counsel filed points and authorities on the section 654 issues involved.

Upon pronouncement of judgment on April 21, 1986, Ronald Ross was sentenced to a term of 11 years and 8 months in state prison. Leonard Ross was sentenced to a total term of 19 years in state prison.

Both defendants and the people filed timely appeals.

DISCUSSION

I.

*Whether the Trial Court Erred in Conducting the Postplea Evidentiary Hearing on Section 654 Issues*

■ The trial judge and counsel for all parties were alert to the potential application of section 654 to many of the offenses. Counsel for defendants argued that this issue must be resolved in defendants' favor as a matter of law,[4] and that an evidentiary hearing was unnecessary. The district attorney, on the other hand, insisted that "because [defendants] have pled guilty the court has not had the benefit of enough facts, I don't believe, to intelligently decide the factual issues which are necessary to in turn decide the 654 legal issues." The court agreed and proceeded to hear testimony on the pertinent factual questions.

Defendants contend that no decision or other authority permitted the trial court to conduct the postplea evidentiary hearing on section 654 issues. This argument appears to have been inspired by dicta in a concurring opinion of then-appellate court Justice Kaus in *People* v. *Venegas* (1970) 10 Cal.App.3d 814, 826 [89 Cal.Rptr. 103]. There, Justice Kaus pointed out

---

[4] For example, counsel for Leonard argued that the great bodily injury allegation regarding the robbery of Officer Esparza's gun was committed with the same weapon used in the attempted murder of the officer. Counsel contended that in accepting the plea of guilty to both offenses and admission of the enhancement allegations the court made what amounted to a "factual finding" that the two offenses were committed by "the same act." According to counsel, "it is inconsistent to now say that they are separate and distinct crimes."

that application of section 654 "often depends on which of several conflicting inferences . . . is accepted by the trial court. Ironically, however, that evidence was never offered for the purpose of proving or disproving whether the defendant is subject to double punishment. Moreover, evidence which is relevant to that issue, may be inadmissible during the guilt phase of the proceeding, or may be intentionally withheld. Obviously a person who is fighting a robbery-rape charge with an alibi is not going to take the stand and testify to the full extent of his criminal objective. The trial record is therefore the wrong tool for intelligent factfinding with respect to the applicability of the relevant test under section 654." (*Id.,* at p. 827, fn. omitted.) The language upon which defendants rely follows: "[T]hat is a situation which we shall have to put up with until the law provides for a hearing directed toward the resolution of the issues relevant to the question of double punishment . . . ." (*Ibid.,* fn. omitted.)

As dicta in a concurring opinion, we do not find this observation dispositive.[5]

Other cases indicate that a trial court may appropriately pursue a section 654 inquiry beyond the record presented at the time of plea. For example, in *People* v. *Rosenberg* (1963) 212 Cal.App.2d 773 [28 Cal.Rptr. 214], the appellate court utilized a probation report prepared after entry of defendant's guilty plea, and which had been read and considered by the trial court, to supply the information necessary to determine that section 654 did apply. (*Id.,* at pp. 776-777.) The court pointed out, however, that "if matter is before the trial court which suggests the probability that the several offenses constituted a course of conduct comprising an indivisible transaction, that court must pursue the matter further so that the question so raised may be resolved in harmony with the provisions of section 654 of the Penal Code . . . ." (*Id.,* at p. 776; see also *People* v. *Lockheed Shipbuilding & Constr. Co.* (1977) 69 Cal.App.3d Supp. 1 [138 Cal.Rptr. 445].)

Appellants' theory that section 654 issues may be resolved only on the basis of evidence presented to the trier of fact prior to the entering of a verdict or plea of guilty is heavily dependent on cases indicating that "serious constitutional questions of due process of law are raised where a defendant is given a greatly enhanced sentence based upon facts found exclusively by the sentencing judge and not by a jury." (*People* v. *Foley* (1985) 170 Cal.App.3d 1039, 1055 [216 Cal.Rptr. 865], fn. omitted, and cases there

---

[5] Nor do we place any weight on the footnote in *People* v. *Raby* (1986) 179 Cal.App.3d 577, 582 [224 Cal.Rptr. 576], footnote 1, also relied upon by defendants, wherein the court observed: "Curiously, so far as we are aware, no one has ever challenged the authority of the court, as opposed to the jury, to make this factual determination in . . . Penal code section 654 situations." It is unclear whether the court thought the failure to challenge "curious" because it may have merit or because it is unusual for the defense bar to long leave any stone unturned. In any event, the court did not seriously address the issue.

cited.) As is readily apparent, however, these cases all involve the imposition of sentence *enhancements,* not section 654 determinations. For example, in *Foley* the question was whether full-term consecutive sentences were unlawfully imposed under subdivision (c) of section 667.6, which authorizes a full, separate, and consecutive term for the commission of certain sex offenses "by force, violence, duress, menace or fear of immediate and unlawful bodily injury on the victim or another person whether or not the crimes were committed during a single transaction." Due to the punitive purpose of provisions such as this, due process requires that the necessary facts must be pled, proved, and found by the jury beyond a reasonable doubt. (See, e.g., *People* v. *Reyes* (1984) 153 Cal.App.3d 803, 813 [200 Cal.Rptr. 651].)

The cases relied upon are inapposite. Unlike enhancements of the sort exemplified by section 667.6, section 654 was designed to *prevent* additional punishment where a jury has convicted a defendant of multiple offenses involving the same acts or omissions. The facts that trigger the limitation are not described in the statute, which simply states that "An act or omission which is made punishable in different ways by different provisions of this code may be punished under either of such provisions, but in no case can it be punished under more than one . . . ." (§ 654.) Absent a plea of guilty, the threshold question whether the defendant is guilty of proscribed acts or omissions that may be differently punishable is necessarily decided by the trier of fact when it renders its verdict. However, this is the only question pertinent to the application of section 654 that is not reserved for the sentencing judge. "Notwithstanding the apparent simplicity of its language, the applicability of section 654 in a particular case often involves a difficult analytical problem. . . . Each case must be determined on the basis of its own facts, and general principles applicable to one type of case may not apply to another." (*In re Adams* (1975) 14 Cal.3d 629, 633 [122 Cal.Rptr. 73, 536 P.2d 473].) These are not the sort of issues that are submitted to a jury. (Compare CALJIC No. 17.15 et seq., regarding punishment enhancement findings.)

The factual questions that are involved in determining the applicability of the statute—for example, whether the defendant held multiple criminal objectives—will in the vast majority of cases be resolved by the sentencing judge on the basis of the evidence received during trial. Therefore, the question whether an evidentiary hearing relative to section 654 issues may be convened during the sentencing process arises only where the evidence produced during trial sheds insufficient light on the 654 issues or where, as here, a guilty plea is entered and there is no trial. To say that in circumstances such as these a trial judge may not hold an evidentiary hearing to establish an otherwise nonexistent factual basis for a necessary sentencing

decision would advance no legitimate interest of any party—least of all the defendant, who is the main beneficiary of section 654—and be absurd.

The right to enter a plea of guilty or to waive trial by jury cannot be deemed to include the right to deprive the court of facts that must be known in order to make a correct sentencing decision; nor can a plea bargain limit that inherent judicial prerogative.

Though it is also designed to prevent harassment and to save both the state and defendants time and resources (*In re Dennis B.* (1976) 18 Cal.3d 687, 692 [135 Cal.Rptr. 82, 557 P.2d 514]), the chief purpose of the legislative protection against punishment for more than one violation arising out of an "act or omission" is to insure that a defendant's punishment will be commensurate with his culpability. (*People* v. *Perez* (1979) 23 Cal.3d 545, 551 [153 Cal.Rptr. 40, 591 P.2d 63].) The trial court correctly understood that it could not achieve this central purpose without convening an evidentiary hearing. There was no error.

## II.-VI.*

. . . . . . . . . . . . . . . . . . .

## CONCLUSION

The judgment as to Ronald Ross is reversed insofar as it imposes sentence for the conspiracy to commit robbery (count 1, violation of §§ 182, subd. 1,211). The judgment as to Leonard Ross is reversed insofar as it imposes sentence for the conspiracy (count 1, violation of §§ 182, subd. 1,211) and for leaving the scene of an injury accident (count 11, in violation of Veh. Code, § 20001). In all other respects, the judgments are affirmed.

Rouse, J., and Benson, J., concurred.

---

* See footnote, *ante,* page 1232.